JUDGE SCHEINDLIN

14 CV 1826

PREET BHARARA
United States Attorney
Southern District of New York
By:     LI YU
        CARINA H. SCHOENBERGER
        EMILY E. DAUGHTRY
        Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel. Nos. (212) 637-2734/2822/2777
Fax Nos. (212) 637-2686/2702

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- x

UNITED STATES OF AMERICA,                  :     **COMPLAINT**

                        Plaintiff,         :

                                           :     14 Civ. _____

            v.                             :

                                           :     ECF Case

RELATED COMPANIES and its subsidiaries and affiliates   :
d/b/a RELATED and/or RELATED COMPANIES;
TRIBECA GREEN, LLC; BPC GREEN, LLC; ROBERT   :
A.M. STERN ARCHITECTS, LLP; and ISMAEL LEYVA   :
ARCHITECTS, P.C.,                          :

                                           :

                        Defendants.        :

-------------------------------------------------------------------- x

RECEIVED
MAR 17 2014
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff United States of America (the "United States") alleges as follows:

1.      This action is brought by the United States to enforce the Fair Housing Act, Title

VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988

(the "Fair Housing Act" or the "Act"), 42 U.S.C. §§ 3601-3619, and the Americans with

Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101-12213, its implementing regulation, the ADA

Standards for Accessible Design, 28 C.F.R. § 36.401; 28 C.F.R. Pt. 36 Appendix A (1991 ADA

Standards for Accessible Design), as amended at 28 C.F.R. Pt. 36 Appendix D (2010 ADA

Standards for Accessible Design) (hereinafter, the "ADA Standards").  As set forth below, the

United States alleges that Defendants, the developers and architects of numerous residential

apartment complexes, including the One Carnegie Hill Apartments ("One Carnegie Hill") and Tribeca Green Apartments ("Tribeca Green") in Manhattan, have unlawfully discriminated against persons with disabilities under the Fair Housing Act and the ADA by failing to design and construct covered multi-family dwellings and associated places of public accommodation, so as to be accessible to persons with disabilities.

## Jurisdiction and Venue

2.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 3614(a) and 12188(b)(1)(B).

3.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because one or more of the defendants are resident in this District, because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this District, and because a substantial number of the properties that are the subject of this action are located in this District.

## The One Carnegie Hill Property

4.     One Carnegie Hill is a residential apartment building located at 215 East 96th Street in New York, New York.   The complex consists of a tower with elevator access and contains 475 rental or condominium apartment units and public and common use areas, including a leasing office, a laundry valet office, indoor and outdoor recreational areas, two common use terraces, a children's play room, a business center, a fitness center, a tenants' club room, and storage areas for tenants.

5.     The rental and condominium units at One Carnegie Hill are "dwellings" within the meaning of 42 U.S.C. § 3602(b), and "dwelling units" within the meaning of 24 C.F.R. § 100.21.

6.     One Carnegie Hill was designed and constructed for first occupancy after March 13, 1991.  All of the rental and condominium units are "covered multi-family dwellings" within the

meaning of 42 U.S.C. § 3604(f)(7) and 24 C.F.R. § 100.21.   The complex is subject to the accessibility requirements of 42 U.S.C. § 3604(f)(3)(C) and 24 C.F.R. § 100.205(a), (c).

7.    In addition, the leasing office and the main lobby at One Carnegie Hill were constructed for first occupancy after January 26, 1993, and are places of public accommodation within the meaning of 42 U.S.C. § 12181(7)(E) and 28 C.F.R. § 36.104.   These areas, therefore, are required to meet the accessibility requirements of the ADA Standards.

### The Tribeca Green Property

8.    Tribeca Green is a residential apartment building located at 325 North End Avenue in New York, New York.   The complex consists of a tower with elevator access and contains 278 rental apartment units and public and common use areas, including a leasing office, laundry facilities, a fitness center, a business center, and a children's play room.

9.    The rental units at Tribeca Green are "dwellings" within the meaning of 42 U.S.C. § 3602(b), and "dwelling units" within the meaning of 24 C.F.R. § 100.21.

10.    Tribeca Green was designed and constructed for first occupancy after March 13, 1991.   All of the rental units are "covered multi-family dwellings" within the meaning of 42 U.S.C. § 3604(f)(7) and 24 C.F.R. § 100.21.   The complex is subject to the accessibility requirements of 42 U.S.C. § 3604(f)(3)(C) and 24 C.F.R. § 100.205(a), (c).

11.    In addition, the leasing office and the main lobby at Tribeca Green were constructed for first occupancy after January 26, 1993, and are places of public accommodation within the meaning of 42 U.S.C. § 12181(7)(E) and 28 C.F.R. § 36.104.   These areas, therefore, are required to meet the accessibility requirements of the ADA Standards.

### The Defendants

12.    Related Companies is a New York business organization with its headquarters at 60 Columbus Circle in Manhattan.   Related Companies, directly and operating through its

3

subsidiaries and affiliates that do business as Related or Related Companies (collectively, "Related"), is the owner and developer of One Carnegie Hill and, in that capacity, participated in the design and construction of One Carnegie Hill.   Related also is the owner and developer of Tribeca Green and, in that capacity, participated in the design and construction of Tribeca Green.

13.   Tribeca Green, LLC and BPC Green LLC (together the "Tribeca Owners"), two Delaware limited liability companies that are affiliates of Related, are the owners of Tribeca Green and, in that capacity, participated in the design and construction of Tribeca Green.

14.   Ismael Levya Architects, P.C. ("Levya Architects"), a New York professional corporation, drew the architectural plans for One Carnegie Hill and, in that capacity, participated in the design and construction of the apartment complex.   Further, Ismael Levya, the principal of Ismael Levya Architects, was the architect of record for One Carnegie Hill.

15.   Robert A.M. Stern Architects, LLP ("Stern Architects"), a New York professional corporation, drew the architectural plans for Tribeca Green and, in that capacity, participated in the design and construction of the apartment complex.   Further, Robert A.M. Stern, the principal of Robert A.M. Stern Architects, LLP, was the architect of record for Tribeca Green.

### Inaccessible Features of One Carnegie Hill

16.   Related and Levya Architects participated in the design and construction of One Carnegie Hill, which is inaccessible to persons with disabilities.

17.   For instance, One Carnegie Hill was designed and constructed with scores of inaccessible conditions, including, but not limited to, the following:

    a.   Reception counter in the main lobby too high to accommodate persons who use wheelchairs;

    b.   Sign for the leasing office lacks raised-letter Braille for persons with visual impairments;

c.     Excessive force required to operate the entrance door to the leasing office;

d.     Mailboxes mounted too high for persons who use wheelchairs;

e.     Excessively high thresholds at entrances to individual units and at entrances to individual unit bathrooms and terraces;

f.     Insufficient clear opening width of bedroom, bathroom, terrace, and closet doors in individual units;

g.     Kitchens in individual units lack sufficient width to accommodate persons who use wheelchairs;

h.     Kitchen ranges, refrigerators, and sinks in individual units lack sufficient clearance for persons who use wheelchairs;

i.     Insufficient clear floor space within bathrooms in individual units for maneuvering by persons who use wheelchairs;

j.     Inaccessible locations of electrical outlets and radiator controls in individual units for persons who use wheelchairs;

k.     Lack of clearance at the entrance and excessively high counter at the laundry valet office;

l.     Excessively high thresholds at entrances to trash rooms;

m.     Excessively high threshold and lack of raised-letter signage at the children's play room;

n.     Excessive running slope of ramp leading to the third floor terrace and excessively high threshold at the terrace door;

o.     Lack of handrails for the ramp leading to the roof terrace and excessively high threshold at the roof terrace door;

p.    Excessively high thresholds and inaccessible configuration of the shower

compartments in the fitness center locker room; and

q.    Steps along the route to the tenants' storage area.

18.    In light of some and/or all of the inaccessible conditions identified in paragraph 17

above, Related and Levya Architects failed to comply with applicable local accessible design and

construction provisions, including New York City Local Law 58, in designing and constructing

One Carnegie Hill.

### Inaccessible Features of Tribeca Green

19.    Related, the Tribeca Owners, and Stern Architects participated in the design and

construction of Tribeca Green, which is inaccessible to persons with disabilities.

20.    For instance, Tribeca Green was constructed with scores of inaccessible conditions,

including, but not limited to, the following:

a.    Counter at main lobby desk that is too high to accommodate persons who

use wheelchairs;

b.    Sink in the lobby unisex bathroom is too close to the sidewall and the paper

towel dispenser and soap dispenser in that bathroom are too high to

accommodate persons who use wheelchairs;

c.    Mailboxes mounted too high to accommodate persons who use wheelchairs;

d.    Excessively high thresholds at entrances to individual units and at bathroom,

kitchen, and terrace entrances within individual units;

e.    Insufficient clear opening width of bedroom, bathroom, terrace, and closet

doors in individual units;

f.      Kitchens in individual units lack sufficient width to accommodate persons who use wheelchairs;

g.      Kitchen sinks and refrigerators in individual units lack sufficient clearance for persons who use wheelchairs;

h.      Insufficient clear floor space within bathrooms in individual units for maneuvering by persons who use wheelchairs;

i.      Rear grab bar location behind toilets in individual unit bathrooms obstructed by countertops;

j.      Light switches, thermostats, and kitchen electrical outlets in individual units inaccessible to persons who use wheelchairs;

k.      Trash rooms lack sufficient clearance and appropriate hardware to accommodate persons who use wheelchairs;

l.      The washing machines in the laundry rooms mounted on curbs interfering with access by individuals who use wheelchairs;

m.      The sinks in the laundry rooms lack sufficient clearance for persons who use wheelchairs;

n.      The sink in the children's play room is inaccessible to persons who use wheelchairs;

o.      The entrance doors to the fitness center and the entertainment lounge lack sufficient clearance for persons who use wheelchairs;

p.      Room identification signs for common areas lack raised-letter Braille for persons with visual impairments; and

q.      Common area door require excessive force for persons with certain disabilities.

21.     In light of some and/or all of the inaccessible conditions identified in paragraph 20 above, Related, the Tribeca Owners, and Stern Architects failed to comply with applicable local design and construction provisions, including New York City Local Law 58, in designing and constructing Tribeca Green.

<u>**Related's Additional Properties and Ongoing Constructions**</u>

22.     The widespread inaccessible conditions at both One Carnegie Hill and Tribeca Green – two properties designed and constructed by Related – reflect a pattern or practice on Related's part of failing to comply with the FHA's accessibility requirements in designing and constructing multi-family dwellings covered by the FHA, and a failure to comply with the ADA Standards with regard to those portions of the building covered by the ADA.

23.     Related has designed and constructed twenty or more other multi-family dwellings in at least four states, including, but not limited to, The Strathmore, The Ventura on the Upper East Side in Manhattan, The Lyric at 255 West 94th Street on the Upper West Side in Manhattan, The Caledonia and The Westminster (designed by Stern Architects) in Chelsea, and The MiMA and 1 MiMa Tower in midtown Manhattan.   Related's pattern or practice of failing to design and construct dwellings and associated places of public accommodation in compliance with the FHA and the ADA, as alleged herein, may extend to these other multi-family dwellings and, absent injunctive relief, to other multi-family dwellings that are currently in the process of being designed and constructed, including, but not limited to, the rental complexes at 500 West 30th Street and 15 Hudson Yards.

**Fair Housing Act Claims**

24.     The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1–23 above.

25.     Defendants violated 42 U.S.C. § 3604(f)(3)(C), and 24 C.F.R. § 100.205(c), by failing to design and construct covered multi-family dwellings in such a manner that:

    a.     the public use and common use portions of the dwellings are readily accessible to and usable by persons with disabilities;

    b.     all doors designed to allow passage into and within the dwellings are sufficiently wide to allow passage by persons who use wheelchairs for mobility; and

    c.     all premises within such dwellings contain the following features of adaptive design:

        i)     an accessible route into and through the dwelling;

        ii)     light switches, electrical outlets, thermostats, and/or other environmental controls in accessible locations; and

        iii)     usable kitchens and bathrooms, such that an individual using a wheelchair can maneuver about the space.

26.     Defendants, through the actions and conduct referred to in the preceding paragraph, have:

    a.     Discriminated in the sale or rental of, or otherwise made unavailable or denied, dwellings to buyers or renters because of a disability, in violation of 42 U.S.C. § 3604(f)(1) and 24 C.F.R. § 100.202(a);

    b.      Discriminated against persons in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection with a dwelling, because of a disability, in violation of 42 U.S.C. § 3604(f)(2) and 24 C.F.R. § 100.202(b); and

    c.      Failed to design and construct dwellings in compliance with the accessibility and adaptability features mandated by 42 U.S.C. § 3604(f)(3)(C), and 24 C.F.R. § 100.205.

27.    The conduct of Defendants described above constitutes:

    a.      A pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601-3619; and/or

    b.      A denial to a group of persons of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601-3619, which denial raises an issue of general public importance.

28.    Persons who may have been the victims of Defendants' discriminatory housing practices are aggrieved persons under 42 U.S.C. § 3602(i), and may have suffered injuries as a result of Defendants' conduct described above.

29.    Defendants' discriminatory actions and conduct described above were intentional, willful, and taken in disregard for the rights of others.

**ADA Claims**

30.    The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1–23 above.

31.    Defendants violated Title III of the ADA by designing and constructing places of public accommodation, including the leasing offices and lobbies in multi-family dwellings,

without ensuring that these places of public accommodation were readily accessible to persons with disabilities to the maximum extent feasible.   *See* 42 U.S.C. § 12183(a)(2).

### Prayer for Relief

WHEREFORE, the United States prays that the Court enter an order that:

32.     Declares that the policies and practices of Defendants, as alleged herein, violate the Fair Housing Act;

33.     Declares that Defendants have violated Title III of the ADA;

34.     Enjoins Related from designing and/or constructing its current multi-family dwelling projects, including the rental apartment complexes at 500 West 30th Street and 15 Hudson Yards, and associated places of public accommodation in a manner such that they fail to comply with requirements of the FHA and the ADA;

35.     Enjoins Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with any of them, from:

      a.     Failing or refusing to bring the dwelling units, public use and common use areas, and places of public accommodation and commercial facilities at covered multi-family dwellings that Defendants have designed, developed, and constructed into compliance with the FHA and the ADA;

      b.     Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, persons harmed by Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct;

    c.      Designing and/or constructing any covered multi-family dwellings and associated places of public accommodation in the future that do not comply with requirements of the FHA and the ADA;

    d.      Failing or refusing to conduct a compliance survey at covered multi-family housing complexes and associated places of public accommodation that Defendants have designed, developed, and constructed to determine whether the retrofits ordered in paragraph 35(a) were made properly;

36.     Awards appropriate monetary damages, pursuant to 42 U.S.C. § 3614(c)(1) and § 3614(d)(1)(B), to each person harmed by Defendants' discriminatory conduct and practices;

37.     Assesses a civil penalty against each Defendant in the maximum amount authorized by 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest; and

38.     Assesses a civil penalty against each Defendant in the amount authorized by 42

U.S.C. § 12188(b)(2)(C); 28 C.F.R. § 36.504(a)(3), to vindicate the public interest.

The United States further prays for such additional relief as the interests of justice may require.

ERIC H. HOLDER, JR.
Attorney General of the United States

JOCELYN SAMUELS
Acting Assistant Attorney General
Civil Rights Division

Date: New York, New York
March / 7, 2014

PREET BHARARA
United States Attorney

By: _____
LI YU
CARINA H. SCHOENBERGER
EMILY E. DAUGHTRY
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel. Nos. (212) 637-2734/2822/2777
Fax Nos. (212) 637-2686/2702
Li.Yu@usdoj.gov
Carina.Schoenberger@usdoj.gov
Emily.Daughtry@usdoj.gov

13