

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/10/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 14 Civ. 1826 (SAS) |
| -against- | |
| RELATED COMPANIES, L.P., and its subsidiaries and affiliates; UPPER EAST LEASE ASSOCIATES, LLC; TRIBECA GREEN, LLC; ROBERT A.M. STERN ARCHITECTS, LLP, and ISMAEL LEYVA ARCHITECTS, P.C., | **CONSENT DECREE** |
| Defendants. | |

## INTRODUCTION

This Consent Decree is entered into between Plaintiff the United States of America

(the "United States") and Defendants Related Companies, L.P., and its subsidiaries and affiliates,

Upper East Lease Associates, LLC, and Tribeca Green, LLC (collectively, the "Settling

Defendants");

WHEREAS, the United States brought this action (the "Action") to enforce

provisions of the Fair Housing Act ("FHA"), codified at 42 U.S.C. §§ 3601–3619.  Specifically,

the United States' complaint in this Action, filed on March 17, 2014, alleges that the Settling

Defendants as well as co-defendants Robert A.M. Stern Architects, LLP, and Ismael Leyva

Architects, P.C. (together, the "Architect Defendants") have engaged in a pattern or practice of

discrimination, and have denied rights to a group of persons in a manner raising an issue of

general public importance, by failing to design and/or construct the One Carnegie Hill

Apartments ("One Carnegie Hill") and Tribeca Green Apartments ("Tribeca Green"), two

residential apartment complexes in Manhattan, with the features of accessible and adaptive

design and construction required by the FHA, 42 U.S.C. § 3604(f)(3)(C);

WHEREAS, One Carnegie Hill and Tribeca Green are subject to the accessible

design and construction requirements of the FHA, 42 U.S.C. § 3604(f)(3)(c);

A.        **The Settling Defendants**

WHEREAS, Related Companies, L.P., is a New York business organization that, directly and/or operating through its subsidiaries and affiliates (collectively, "Related"), developed One Carnegie Hill and Tribeca Green and, in that capacity, participated in the design and construction of these apartment complexes;

WHEREAS, Upper East Lease Associates, LLC, a Delaware limited liability company, is the owner of One Carnegie Hill and, in that capacity, participated in the design and construction of One Carnegie Hill;

WHEREAS, Tribeca Green, LLC, a Delaware limited liability company, is the owner of Tribeca Green and, in that capacity, participated in the design and construction of Tribeca Green;

B.        **Relevant Requirements of the Fair Housing Act**

WHEREAS, the FHA provides that residential buildings with four or more dwelling units, and one or more elevators, designed and constructed for first occupancy after March 13, 1991, are Covered Multifamily Dwellings and must include certain basic features of accessible and adaptive design to make such units accessible to or adaptable for use by a person who has or develops a disability, 42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(A);

WHEREAS, the accessible and adaptive design provisions of the FHA require that for Covered Multifamily Dwellings: (i) the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability; (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with a disability using wheelchairs; (iii) all premises within such dwellings contain the following features of adaptive design: (1) an accessible route into and

2

through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space. 42 U.S.C. § 3604(f)(3)(c) (these provisions and features are referred to herein as the "Accessible Design Requirements");

C.     **Conditions at One Carnegie Hill and at Tribeca Green**

WHEREAS, One Carnegie Hill is a residential apartment building located at 215 East 96th Street in New York, New York. One Carnegie Hill consists of a tower with elevator access and contains 461 dwelling units, as well as public and common use areas, including a leasing office, a laundry valet office, indoor and outdoor recreational areas, two common use terraces, a children's play room, a business center, a fitness center, a residents' club room, and storage areas for residents;

WHEREAS, the United States inspected One Carnegie Hill on February 13-14, 2012, and specifically identified, among other things, the following conditions at One Carnegie Hill that the United States alleges fail to meet the Accessible Design Requirements:

- Reception counter in the main lobby too high to accommodate persons who use wheelchairs;

- Sign for the leasing office lacks raised-letter Braille for persons with visual impairments;

- Excessive force required to operate the entrance door to the leasing office;

- Mailboxes mounted too high for persons who use wheelchairs;

- Excessively high thresholds at entrances to individual units and at entrances to individual unit bathrooms and terraces;

- Insufficient clear opening width of bedroom, bathroom, and closet doors in individual

units;

- Kitchens in individual units lack sufficient width to accommodate persons who use wheelchairs;

- Kitchen ranges, refrigerators, and sinks in individual units lack sufficient clearance for persons who use wheelchairs;

- Insufficient clear floor space within bathrooms in individual units for maneuvering by persons who use wheelchairs;

- Inaccessible locations of electrical outlets and radiator controls in individual units for persons who use wheelchairs;

-  Lack of clearance at the entrance and excessively high counter at the laundry valet office;

- Excessively high thresholds at entrances to trash rooms;

- Excessively high threshold and lack of raised-letter signage at the children's play room;

- Excessive running slope of ramp leading to the third floor terrace and excessively high threshold at the terrace door;

- Lack of handrails for the ramp leading to the roof terrace and excessively high threshold at the roof terrace door;

- Excessively high thresholds and inaccessible configuration of the shower compartments in the fitness center locker rooms; and

- Steps along the route to the residents' storage area.

WHEREAS, Tribeca Green is a residential apartment building located at 325 North End Avenue in New York, New York.  Tribeca Green consists of a tower with elevator access and contains 274 dwelling units, as well as public and common use areas, including a leasing

4

office, laundry facilities, a fitness center, a business center, and a children's play room;

WHEREAS, the United States inspected Tribeca Green on February 1-2, 2012, and specifically identified, among other things, the following conditions at Tribeca Green that the United States alleges fail to meet the Accessible Design Requirements:

- Counter at main lobby desk too high to accommodate persons who use wheelchairs;
- Sink in the lobby unisex bathroom too close to sidewall and paper towel dispenser and soap dispenser in that bathroom too high to accommodate persons who use wheelchairs;
- Mailboxes mounted too high to accommodate persons who use wheelchairs;
- Excessively high thresholds at entrances to individual units and at bathroom, kitchen, and terrace entrances within individual units;
- Insufficient clear opening width of bedroom, bathroom, terrace, and closet doors in individual units;
- Kitchens in individual units lack sufficient width to accommodate persons who use wheelchairs;
- Kitchen sinks and refrigerators in individual units lack sufficient clearance for persons who use wheelchairs;
- Insufficient clear floor space within bathrooms in individual units for maneuvering by persons who use wheelchairs;
- Rear grab bar location behind toilets in individual unit bathrooms obstructed by countertops;
- Light switches, thermostats, and kitchen electrical outlets in individual units inaccessible to persons who use wheelchairs;
- Trash rooms lack sufficient clearance and appropriate hardware to accommodate

5

persons who use wheelchairs;

- Washing machines in the laundry rooms mounted on curbs that interfere with access by individuals who use wheelchairs;

- Sinks in laundry rooms lack sufficient knee clearance for persons who use wheelchairs;

- Sink in the children's play room lack sufficient knee clearance for persons who use wheelchairs;

- Entrance doors to the fitness center and the entertainment lounge lack sufficient clearance for persons who use wheelchairs;

- Room identification signs for common areas lack raised-letter or Braille; and

- Common area doors require excessive force for persons with certain disabilities.

**D.      Consent of the Parties to Entry of this Decree**

WHEREAS, the parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a), and further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or a trial;

WHEREAS, the parties' entry into this Consent Decree is not intended to and does not limit Related, Upper East Lease Associates, LLC, or Tribeca Green, LLC, individually or collectively, from instituting a separate action seeking contribution, or damages in the nature of indemnification or breach of contract or for any related reason from any individual or entity involved in the design and construction of the property that is the subject of this Consent Decree, including but not limited to the Architect Defendants;

WHEREAS, the Settling Defendants agree to make modifications to One Carnegie Hill and Tribeca Green as set forth herein and in the attached appendices;

6

WHEREAS, pursuant to Section IV of this Consent Decree, the United States and Related have agreed to a process for identifying the retrofits to be made at certain additional properties developed by Related; specifically, the United States and Related anticipate agreeing to in-unit retrofits to be performed by Related at the buildings identified on Appendix E that will be generally comparable in scope to the in-unit retrofits set forth in Appendices B-1 and B-2, subject to – with respect to the conditions identified in Appendix J – the extent and frequency of the deviations, if any, of the conditions present at the building from the relevant aspects of the Standard selected for that building pursuant to paragraph 21 below;

WHEREAS, the parties agree to the entry of this Consent Decree.

**It is hereby ORDERED, ADJUDGED, and DECREED:**

### I. GENERAL INJUNCTION

1.     The Settling Defendants and each of their officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with them, are enjoined from discriminating on the basis of disability as prohibited by the FHA, 42 U.S.C. § 3604.

### II. RETROFITS AT ONE CARNEGIE HILL AND TRIBECA GREEN

2.     The United States alleges that One Carnegie Hill and Tribeca Green were not designed or constructed in accordance with the FHA or the Fair Housing Accessibility Guidelines, Design Guidelines for Accessible/Adaptable Dwellings, 56 Fed. Reg. 9472 (Mar. 6, 1991) (the "Guidelines"). Without admitting liability, Upper East Lease Associates, LLC, agrees to address the conditions alleged to be FHA violations at One Carnegie Hill by making the modifications set forth in Appendices A-1 and B-1, and Tribeca Green, LLC, agrees to address the conditions alleged to be FHA violations at Tribeca Green by making the modifications set forth in Appendices A-2 and B-2.

**A.     Modifications to the Public and Common Use Areas**

3.     The Settling Defendants acknowledge that the public and common use areas at One Carnegie Hill and at Tribeca Green do not meet the requirements of any recognized safe harbor for compliance with the FHA. Upper East Lease Associates, LLC, and Tribeca Green, LLC, agree to modify the public and common use areas of One Carnegie Hill and Tribeca Green by taking the actions described herein and in Appendices A-1 and A-2, respectively.

4.     As soon as reasonably possible, but no later than twelve (12) months from the entry of this Consent Decree, Upper East Lease Associates, LLC, shall finish the retrofits listed in Appendix A-1 at One Carnegie Hill, and Tribeca Green, LLC, shall finish the retrofits listed in Appendix A-2 at Tribeca Green. Upper East Lease Associates, LLC, and Tribeca Green, LLC, shall make reasonable efforts to minimize inconvenience to residents in making such retrofits.

5.     Within fifteen (15) days of the entry of this Consent Decree, Upper East Lease Associates, LLC, and Tribeca Green, LLC, shall provide written notices to all residents at One Carnegie Hill and at Tribeca Green, respectively, stating that the retrofits required by this Consent Decree will be performed to the public and common use areas at One Carnegie Hill and Tribeca Green. Such notices shall conform to Appendix C.

6.     Upper East Lease Associates, LLC, and Tribeca Green, LLC, shall certify to the United States in writing that the notices required by paragraph 5 have been distributed and shall specify the manner in which they were distributed, within fifteen (15) days after such distribution. Such certification shall include the names and addresses of the persons to whom the notices were distributed.

**B.     Modifications to Dwelling Unit Interiors**

7.     The Settling Defendants acknowledge that the dwelling unit interiors of One Carnegie Hill and Tribeca Green do not meet the requirements of any recognized safe harbor for compliance with the FHA. Upper East Lease Associates, LLC, and Tribeca Green, LLC, agree

8

to modify the dwelling unit interiors of One Carnegie Hill and Tribeca Green by taking the actions described herein and in Appendices B-1 and B-2, respectively.

8.     For each unit at One Carnegie Hill listed in Appendix B-1 and each unit at Tribeca Green listed in Appendix B-2, as soon as reasonably possible, but no later than six (6) months from the entry of this Consent Decree (unless otherwise specified in Appendices B-1 and B-2), Upper East Lease Associates, LLC shall finish the retrofits listed in Appendix B-1 at One Carnegie Hill, and Tribeca Green, LLC shall finish the retrofits listed in Appendix B-2 at Tribeca Green. Upper East Lease Associates, LLC and Tribeca Green, LLC shall make reasonable efforts to minimize inconvenience to residents in making such retrofits.

9.     Within thirty (30) days from the date of the entry of this Consent Decree, Upper East Lease Associates, LLC and Tribeca Green, LLC shall inform each resident who resides in an individual dwelling unit that is subject to being retrofitted at One Carnegie Hill and Tribeca Green, respectively, that: (1) the United States has alleged that certain features of the resident's unit do not meet the accessible and adaptive design requirements of the FHA and that, to settle this lawsuit, Upper East Lease Associates, LLC or Tribeca Green, LLC agreed to retrofit certain features of the unit to make them more accessible; (2) the retrofits set forth in Appendices B-1 and B-2 will be provided within forty-five (45) days of any request but will, in any event, take place within six (6) months, unless otherwise specified in the consent decree; and (3) the scheduling of the retrofits will take into account the preferences and convenience of the resident or future resident and that relocation costs, if any, will be provided in advance. The notice shall be substantially in the form of Appendix D and may be delivered electronically or in hard copy.

10.     Upper East Lease Associates, LLC and Tribeca Green, LLC shall certify to the United States in writing that the notices described in paragraph 9 have been distributed and shall specify the manner in which they were distributed, within fifteen (15) days after such

9

distribution.  Such certification shall include the names and addresses of the persons to whom the notices were distributed.

### III. RECENT CONSTRUCTION

11.     Related is completing construction of two multifamily housing complexes located at 500 West 30th Street and 529 West 29th Street in Manhattan.  These properties shall be referred to together as the "Recent Construction."  In connection with this Action, a surveyor jointly retained by the United States and Related has inspected the Recent Construction.  In May 2014, the jointly-retained surveyor provided reports to the United States and Related concerning the conditions at the Recent Construction that do not conform to the specifications set forth in the Fair Housing Act Design Manual, A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act (August 1996, Rev. April 1998) (the "Recent Construction Inspection Reports").

12.     Within thirty (30) days of entry of this Consent Decree, unless otherwise agreed to by the parties or ordered by the Court, Related shall submit to the United States a proposal for performing the retrofits required to bring the common and public use areas and the individual units at the Recent Construction into compliance with the FHA.

13.     Within thirty (30) days of receipt of the retrofit proposal for the Recent Construction, unless otherwise agreed to by the parties or ordered by the Court, the United States shall notify Related in writing of any objections to the proposal.  If there are no written objections, Related shall proceed with the modifications as specified.  If the United States objects, the parties shall endeavor to expeditiously and in good faith resolve any objections, after which Related shall, within fifteen (15) days (except as otherwise agreed to by the parties or ordered by the Court), submit a revised retrofit proposal, to which the United States shall have fifteen (15) days to provide written objections; if there are no objections, Related shall, unless

otherwise agreed to by the parties or ordered by the Court, proceed with the modifications as specified in the revised retrofit proposal. If, after expeditious and good faith negotiations, the parties are unable to resolve any differences concerning appropriate modifications, either party may raise the matter(s) to the Court for resolution.

14.     Related shall, except as otherwise agreed to by the parties or ordered by the Court, make the retrofits to common or public use areas at the Recent Construction within ninety (90) days of the United States' approval of the retrofit proposal. Related shall make reasonable efforts to minimize inconvenience to residents in making such retrofits.

15.     Following the United States' approval of the retrofit proposal for the Recent Construction, Related shall, except as otherwise agreed to by the parties or ordered by the Court, perform all retrofits to individual dwelling units no later than (a) one hundred and eighty (180) days after the United States' approval of the retrofit proposal, or (b) ten (10) days from the request of any resident or future resident of the unit. Related shall make reasonable efforts to minimize inconvenience to residents in making such retrofits.

16.     Within thirty (30) days of the United States' approval of the retrofit proposal for the Recent Construction, Related shall inform each resident or prospective resident[1] for a unit that is subject to being retrofitted in any manner set forth in the retrofit proposal, that (1) to settle a lawsuit, Related has agreed to retrofit certain features of the unit to make them more accessible; (2) additional features of accessible and adaptive design can be retrofitted in the unit upon request of the resident or prospective resident; (3) the retrofits offered will be at no cost to the unit resident or prospective resident; and (4) the scheduling of the retrofits will take into account the preferences and convenience of the resident or prospective resident and that

---

[1]     For purposes of this Consent Decree, "prospective resident" shall mean any individual who has taken a tour of a unit and/or applied to lease a unit, but has not yet signed a lease. The scheduling of mandatory retrofits in individual units need not take into account the preferences and convenience of a prospective tenant who has not yet signed a lease.

relocation costs, if any, will be provided in advance. The notice(s) shall be substantially in the form of Appendix D, modified as appropriate to reflect the particular Recent Construction at issue and the applicable retrofits.

17.     Related shall certify to the United States in writing that the notices described in paragraph 16 have been distributed and shall specify the manner in which they were distributed as part of their annual reporting requirement. Such certification shall include the names and addresses of the persons to whom the notices were distributed.

18.     Related shall pay all costs associated with the modifications/retrofits to each Recent Construction, without prejudice to its ability to seek contribution or indemnification from other sources for such modifications/retrofits.

## IV. ADDITIONAL PROPERTIES

19.     In addition to One Carnegie Hill and Tribeca Green, Related has designed and constructed for occupancy after March 13, 1991, certain other multifamily housing complexes, listed in Appendix E. These properties shall be referred to as the "Additional Properties."

20.     Within sixty (60) days from the entry of this Consent Decree, unless otherwise agreed to or ordered by the Court, Related shall retain one or more licensed design professionals with expertise regarding the FHA and the Accessible Design Requirements ("Surveyor(s)"), who must be proposed by Related and approved by the United States, to survey each of the Additional Properties to determine what actions, if any, must be taken to bring these properties into compliance with the accessibility requirements of the FHA.

21.     For purposes of conducting surveys and reporting survey results as required by this section of this Consent Decree (*i.e.*, Section IV), the Surveyor(s) shall measure and report compliance with the FHA by reference to one of the following standards (each a "Standard"), where such a single Standard has been used in its entirety: (*i*) the Guidelines; (*ii*) a standard

12

designated as an FHA safe harbor by the Department of Housing and Urban Development; or (*iii*) a recognized, comparable, objective standard of accessibility that has been found by this District Court or the Second Circuit to incorporate the requirements of the Fair Housing Act. For each Additional Property, Related shall select a single Standard that shall be applied by the Surveyor to that property. Different Standards, however, may be selected to be used for the surveys of different properties.

22.     The Surveyor(s) shall physically inspect (*i*) all common and public use areas at each Additional Properties, and, (*ii*) an appropriate number of units at each Additional Property that, based on the Surveyor(s)' review of the architectural or site plans, drawings, or blueprints, and the Surveyor(s)' professional judgment, contain a representative sample of the in-unit features at that Additional Property.

23.     Related shall provide the Surveyor(s) with the best available information regarding the size and location of grab bar reinforcements. Such information must include a physical inspection of one dwelling unit bathroom within each Additional Property to ascertain the presence and length of grab bar reinforcement, and a certification from a person involved with the construction of such property that similar reinforcements were installed in all other units of that property. Neither Related nor the Surveyor(s) will be required to use destructive testing to comply with the requirements of this paragraph.

24.     Within one hundred-twenty (120) days of the entry of this Consent Decree, unless otherwise agreed to or ordered by the Court, Related shall provide the United States with a schedule of the surveys to be performed at each of the Additional Properties, along with a detailed written description of the scope and methodology of each survey that explains how the Surveyor(s) intends to identify all potential instances of non-compliance with the selected Standard at the relevant property, including (a) a statement by the Surveyor(s) regarding how the

13

Surveyor(s) plans to identify representative unit types, (b) the list of in-unit conditions to be inspected by the Surveyor(s) as set forth in Appendix J, and (c) a description of the survey protocol for each property to be inspected. Each survey must include photographic documentation of any feature that does not comply with the requirements of the selected Standard. The United States shall have sixty (60) days to disapprove, or suggest modifications to, the proposed survey methodology for an Additional Property, unless otherwise agreed to or ordered by the Court.

25.    Related shall complete surveys of the Additional Properties set forth in Appendix E within twelve (12) months of entry of this Consent Decree, unless otherwise agreed to or ordered by the Court. The United States shall have the right to accompany the Surveyor(s) on his or her survey of each property, and the Surveyor(s) shall provide the United States with reasonable notice of each survey, at least thirty (30) days in advance of any survey. For each Additional Property, within thirty (30) days following the completion of the physical survey of that property, the Surveyor(s) shall provide to the United States and Related a detailed written report setting out the scope and methodology of each survey and all of the information set forth in paragraphs 21 and 24 above, including details and photographic documentation regarding any features that do not comply with the Standard applicable to that Additional Property.

26.    Within ninety (90) days of receipt of each report of the Surveyor(s), unless otherwise agreed to or ordered by the Court, Related shall submit to the United States a proposal for performing the retrofits required to bring the common and public use areas and the individual dwelling units into compliance with the accessibility requirements of the FHA. In creating such proposals, Related may consider factors including, but not limited to, how specific design features provide accessibility for persons with disabilities, the inconvenience to residents, and cost. Related may detail its consideration of such factors in written submissions accompanying

14

its proposals. Related shall not be deemed to have admitted liability based on its proposing or making a retrofit to any condition in an Additional Property.

27.     Within sixty (60) days of receipt from Related of each retrofit proposal, unless otherwise agreed to or ordered by the Court, the United States shall notify Related in writing of any objections to Related's proposals. If the United States provides no written objections to a proposal, Related shall proceed with the modifications it specified. If the United States provides written objections to any proposal, the parties shall endeavor to expeditiously and in good faith resolve any objections, after which Related shall, within thirty (30) days, except as otherwise agreed to or ordered by the Court, submit a revised retrofit proposal, to which the United States shall have thirty (30) days to provide written objections; if there are no objections, Related shall proceed with the modifications it specified in the revised retrofit proposal. The United States and Related anticipate agreeing to in-unit retrofits to be performed by Related at the additional properties that will be generally comparable in scope to the in-unit retrofits set forth in Appendices B-1 and B-2, subject to – with respect to the conditions identified in Appendix J – the extent and frequency of the deviations, if any, of the conditions present at the building from the relevant aspects of the Standard selected for that building pursuant to paragraphs 21 and 24 above. If, after expeditious and good faith negotiations, the parties are unable to resolve any differences concerning appropriate modifications, either party may raise the matter(s) to the Court for resolution.

28.     Unless otherwise agreed to by the parties or ordered by the Court, Related shall make the retrofits to common or public use areas of each Additional Property within twelve (12) months after the United States' approval of a retrofit proposal for that property. Related shall make reasonable efforts to minimize inconvenience to residents of the Additional Properties in making such retrofits.

15

29.     For the Additional Properties identified in <u>Appendix E</u>, Related shall perform all retrofits to the individual dwelling units at those properties no later than the earliest of (a) prior to the re-occupancy of any vacated units, (b) ten (10) days from the written request of any resident or future resident of the unit, or (c) the expiration of this Consent Decree. Related shall make reasonable efforts to minimize inconvenience to residents of the additional properties in making such retrofits.

30.     Within thirty (30) days of the United States' approval of a retrofit proposal for an Additional Property, unless otherwise agreed to by the parties or ordered by the Court, Related shall inform each resident or prospective resident of a unit that is subject to being retrofitted in any manner set forth in the applicable retrofit proposal, that (1) to settle a lawsuit, Related has agreed to retrofit certain features of the unit to make them more accessible; (2) the features of accessible and adaptive design can be retrofitted in the unit upon written request of the resident or prospective resident; (3) the retrofits offered will be at no cost to the resident or prospective resident; and (4) the scheduling of the retrofits will take into account the preferences and convenience of the resident or prospective resident and that relocation costs, if any, will be provided in advance. The notice(s) shall be substantially in the form of <u>Appendix D</u>, modified as appropriate to reflect the particular property at issue and the applicable retrofit proposal.

31.     Related shall certify to the United States in writing that the notices described in paragraph 30 for the Additional Properties have been distributed and shall specify the manner in which they were distributed as part of its annual reporting requirement. Such certification shall include the names and addresses of the persons to whom the notices were distributed.

32.     Related shall pay all costs associated with the surveys and modifications/retrofits to the Additional Properties, without prejudice to its ability to seek contribution or indemnification from other sources for such modifications/retrofits.

16

## V. PER DIEM FOR DISPLACEMENT

33.     In the event that a resident of a unit within One Carnegie Hill, Tribeca Green, or an Additional Property that is scheduled to undergo a modification is dislocated from his or her unit for more than a 14-hour consecutive period, Related shall pay such resident, *pro rata*, the applicable federal government per diem rate for food and lodging for the local area (as available at www.gsa.gov – click on "per diem rates" under travel) for each day or half-day of undue inconvenience or hardship.  Such payment shall be made prior to the commencement of any retrofit work on the resident's unit, so that the resident can use the money to obtain alternative living accommodations while dislocated.

## VI. NO ADVERSE ACTION

34.     Neither present nor future residents of One Carnegie Hill, Tribeca Green, any Recent Construction, or any Additional Property may be charged any additional rent, deposit, fee, or other consideration for the units in which retrofits are or may be implemented because of completed, contemplated, or possible retrofits required under this Consent Decree.  Related shall take no adverse action against any present or future resident of One Carnegie Hill, Tribeca Green, any Recent Construction, or any Additional Property because such person requests to have his or her apartment, or prospective apartment, modified in accordance with this Consent Decree.  Nothing in this paragraph shall restrict or impede Related's rights with respect to One Carnegie Hill, Tribeca Green, the Recent Construction, and the Additional Properties to continue, in a non-discriminatory manner, to lawfully establish and raise rents consistent with their business goals and obligations and with market conditions, including increasing rents after the expiration of a current lease due to an increase in the market value of the unit, whether or not such increase is on account of upgrades to such unit (other than retrofits required under this Consent Decree) done at or about the same time as retrofits required under this Consent Decree.

17

Performance of the retrofits required by the terms of this Consent Decree does not constitute a diminution in services provided by Related at One Carnegie Hill, Tribeca Green, any Recent Construction, or any Additional Property.

### VII.  IMPEDIMENTS TO PERFORMANCE

35.     In the event that any act or omission beyond Related's control and occurring without its fault or negligence affects the performance of any requirement in Sections II, III, or IV, of the Consent Decree, Related and the United States shall endeavor, in good faith, to determine whether modifications to this Consent Decree are necessary and, if so, to seek jointly such modifications from the Court.  If such efforts are unsuccessful, either party may seek relief from the Court.  In particular, if a resident at One Carnegie Hill, Tribeca Green, any Recent Construction, or any Additional Property refuses (whether lawfully or not) to vacate a unit so that required retrofits can be made, Related, Upper East Lease Associates, LLC, or Tribeca Green LLC shall make the retrofit once that resident terminates his or her lease, and this obligation shall survive beyond the expiration of this Consent Decree.  Nothing herein shall be construed as requiring Related to bring a lawsuit against a resident who refuses to allow Related to perform a retrofit to that resident's unit, as specified in Sections II, III or IV of this Consent Decree; and nothing herein shall be construed as requiring Related to perform any act beyond the expiration of this Consent Decree except as specified in this paragraph and paragraph 46 below.

### VIII.  NEUTRAL INSPECTOR

36.     Related shall enter into a contract with a neutral inspector(s) approved by the United States ("Inspector(s)") to conduct on-site inspections of all retrofits performed under this Consent Decree to determine whether modifications have been made in compliance with the specifications in Appendices A-1 and B-1 at One Carnegie Hill and Appendices A-2 and B-2 at Tribeca Green, the specifications in the approved retrofit proposals for the Recent Construction,

18

and the specifications in the approved retrofit proposals for each of the Additional Properties. The Inspector(s) shall have expertise in the design and construction requirements of the FHA. Related may, subject to approval by the United States, elect to retain the Surveyor(s) as the Inspector(s).

37.     The Inspector(s) may, upon request of Related, review and comment upon the sufficiency of all proposed retrofits in writing in advance of any retrofit by Related, but such review and comment shall be completed no later than fourteen (14) days after the request.

38.     An initial inspection of each Recent Construction shall take place within thirty (30) days of the completion of the retrofits (except for retrofits to be made at a resident's request, on vacancy, or prior to the expiration of the Consent Decree) set forth in the applicable approved retrofit proposal, or as soon thereafter as practical.

39.     An initial inspection of One Carnegie Hill and Tribeca Green shall take place within thirty (30) days of the completion of all of the retrofits (except for retrofits to be made at a resident's request, on vacancy, or prior to the expiration of the Consent Decree) set forth in, respectively, Appendices A-1 and B-1 and Appendices A-2 and B-2, or as soon thereafter as practicable.

40.     An initial inspection of each Additional Property shall take place within thirty (30) days of the completion of the retrofits (except for retrofits to be made at a resident's request, on vacancy, or prior to the expiration of the Consent Decree) set forth in the applicable approved retrofit proposal, or as soon thereafter as practical.

41.     With regard to the retrofits for One Carnegie Hill, Tribeca Green, the Recent Construction, and the Additional Properties that are required to made at a resident's request, on vacancy, or prior to the expiration of the Consent Decree, an initial inspection of those retrofits

shall take place within thirty (30) days after four years have passed from the entry of this Consent Decree.

42.     For purposes of efficiency, Related may, with approval of the United States, schedule the initial inspections of multiple properties required by this Section in combination with each other.

43.     For each initial inspection, Related shall give the United States at least twenty-one (21) days prior notice of the inspection and shall give the United States an opportunity to have its representative present for the inspection.

44.     The Inspector(s) shall set out in writing the results of his or her inspection, including any deficits, and shall send that report to Related and to the United States.[2] The report shall state whether the retrofits required by the applicable Appendix or approved retrofit proposal have been completed, and shall list any required retrofits that were not completed.

45.     If the inspection indicates that not all of the required retrofits have been made as specified in the applicable Appendices, or retrofit proposals, Related shall correct any deficiencies within sixty (60) days and shall pay for another inspection by the same Inspector(s) to certify that the deficiencies have been corrected. This process shall continue until the Inspector(s) certifies that all of the necessary modifications have been made. Related shall pay all of the Inspector(s)'s reasonable costs associated with these inspections, and such payments shall be made without regard to the Inspector(s)'s findings. Upon reasonable notice, representatives of the United States shall be permitted to inspect the modifications and/or the third-party inspection reports provided for in this Consent Decree, to ensure compliance, and an expert retained by Related may attend any such inspection.

---

[2]     For purposes of this Consent Decree, notices provided to the United States shall be addressed to Chief, Civil Rights Unit, Office of the United States Attorney for the Southern District of New York, 86 Chambers Street, Third Floor, New York, NY 10007. Electronic courtesy copies also shall be delivered to the undersigned Assistant United States Attorneys.

46.     Nothing in this Consent Decree shall be read to relieve Related's, Upper East Lease Associates, LLC's, or Tribeca Green, LLC's obligations to schedule inspections and/or correct deficiencies as set forth in this Section (including, but not limited to, inspection of the retrofits that Related is required to make prior to the expiration of the Consent Decree) even if such obligations extend beyond the duration of this Consent Decree.

## IX. TRANSFER OF INTEREST IN PROPERTIES

47.     The sale or transfer of ownership, in whole or in part, of Related's, Upper East Lease Associate, LLC's, and/or Tribeca Green, LLC's interest(s) in One Carnegie Hill, Tribeca Green, a Recent Construction, or an Additional Property shall not affect its continuing obligation to retrofit, and/or conduct or allow inspections or surveys of, One Carnegie Hill, Tribeca Green, a Recent Construction, or an Additional Property, as specified in this Consent Decree, unless Related has obtained in writing, as a condition of sale or transfer, the purchaser or transferee's commitment to assume such obligations, so that the purchaser or transferee will be bound by the terms of this Consent Decree to make retrofits and allow or conduct inspections or surveys as set forth in this Consent Decree, and will be subject to the jurisdiction of this Court.

48.     Should Related, Upper East Lease Associate, LLC, and/or Tribeca Green, LLC, decide to sell or transfer any of their ownership in One Carnegie Hill, Tribeca Green, a Recent Construction, or an Additional Property in whole or in part, or any portion thereof, prior to the completion of the retrofits specified in this Consent Decree for One Carnegie Hill, Tribeca Green, the Recent Construction, or the Additional Property, Related Upper East Lease Associate, LLC, and/or Tribeca Green, LLC, will, at least thirty (30) days prior to completion of the sale or transfer: (a) provide each prospective buyer with a copy of this Consent Decree and written notice that the property is subject to this Consent Decree, including specifically Related's, Upper East Lease Associate, LLC's, and/or Tribeca Green, LLC's obligations to either (i) complete

required retrofit work and allow inspections, or (ii) assign such obligations to the purchaser or

transferee by obtaining the purchaser or transferee's commitment to be bound by this Order,

subject to the jurisdiction of this Court; and (b) provide to the United States, by facsimile and

first-class mail, written notice of the owner's intent to sell or transfer ownership, along with a

copy of the notice sent to each buyer, and each buyer's name, address and telephone number.

### X. NON-DISCRIMINATION IN OTHER DESIGN AND CONSTRUCTION

49.     The Settling Defendants shall design and construct all new Covered Multifamily

Dwellings in full compliance with a Standard.  During the term of this Consent Decree, upon

reasonable notice, the United States will be permitted full access to such properties to inspect for

compliance with such standards, rules, and laws.

50.     For each Covered Multifamily Dwelling that Related constructs during the term

of this Consent Decree, Related shall retain an FHA compliance consultant (the "FHA

Consultant") to help ensure that the as-constructed features at such properties comply with the

FHA's Accessible Design Requirements.  Related shall direct its employees, agents, and/or

contractors to seek the FHA Consultant's advice regarding the selection of appliances (*e.g.*,

refrigerators and ranges) and fixtures (*e.g.*, doors, thresholds, and lavatories); the effect of

deviations from the architects' plans on the accessibility of conditions at the property; as well as

other issues that arise during construction that affect accessibility.  Further, prior to the

completion of construction of each building, Related shall arrange for the FHA Consultant to

conduct a visit of the building to identify any construction issues that may result in inaccessible

conditions and recommend appropriate solutions.

51.     The agreement or contract between Related and the FHA Consultant shall

reference the fact that the FHA Consultant is being retained pursuant to this Consent Decree.

Further, within thirty (30) days of retaining the FHA Consultant, Related shall provide a copy of

this Consent Decree to the FHA Consultant and secure the signed statement from the FHA Consultant acknowledging that he or she has received and read the Consent Decree and has had an opportunity to have questions about the Consent Decree answered. This statement shall be substantially similar to the form of Appendix H.

    52.    During the term of this Consent Decree, Related shall submit, on an annual basis, a certification to the counsel for the United States affirming that they have retained a FHA Consultant for each Covered Multifamily Dwelling under construction during that year and specifying each covered multifamily dwelling for which a FHA Consultant was retained by Related to provide advice and the identity (and affiliation, if applicable) of the FHA Consultant. Related shall provide this certification within 15 days of the end of each 12-month period from the entry of this Consent Decree.

    53.    For the duration of this Consent Decree, the Settling Defendants shall maintain, and provide to the United States upon request, the following information and statements regarding any multifamily dwellings intended to be designed and/or constructed in whole or in part, by any one of them, including but not limited to any multifamily dwelling in which any Settling Defendant has a position of control as an officer, director, member, or manager, or has a ten-percent (10%) or more ownership share:

- the name and address of the project;
- a description of the project and the individual units;
- the name, address, and telephone number of the civil engineer(s) involved with the project;
- a statement from the civil engineer(s) involved with the project acknowledging and describing his/her knowledge of and training in the requirements of the FHA and in the field of accessible site design, certifying that he/she has reviewed the engineering

documents for the project and that the design specifications therein fully comply with the requirements of the FHA, and stating a Standard with which the design specifications comply;

- the name, address and telephone number of the architect(s) who are employed or retained by any Settling Defendant and are involved with the project;

- a statement from all architect(s) who are employed or retained by any Settling Defendant and are involved with the project, acknowledging and describing his/her knowledge of and training in the requirements of the FHA and the Guidelines, and in the field of accessible site design, certifying that he/she has reviewed the architectural plans for the project and that the design specifications therein fully comply with the requirements of the FHA, and stating a Standard with which the design specifications comply.

54.     If the engineering documents or architectural plans referred to in paragraph 53 are revised, and the revisions could have any impact on whether the dwellings or complex complies with the FHA, the associated Settling Defendant shall obtain, maintain, and provide to the United States upon request, a statement from the site engineer(s) or architect(s) who are employed or retained by any such Defendant and are involved with the project, as applicable, that all specifications in the revised engineering documents or architectural plans, as pertinent, comply with the requirements of the FHA, and stating a Standard with which the design specifications comply.

## XI. PAYMENTS TO AGGRIEVED PERSONS

55.     Within thirty (30) days of entry of this Consent Decree, Related shall deposit in an interest-bearing account the sum of EIGHT HUNDRED AND TWENTY-FIVE THOUSAND DOLLARS ($825,000) for the purpose of compensating any aggrieved persons who may have

24

suffered as a result of the Settling Defendants' discriminatory housing practices at One Carnegie Hill, Tribeca Green, and the Additional Properties. This deposited money, plus any accrued interest, shall be referred to as the "Initial Settlement Fund."

56.     Within thirty (30) days of the entry of this Consent Decree, Related shall publish the notice at Appendix F, entitled "Notice to Persons Who May Have Suffered from Inadequate Accessible Features at One Carnegie Hill, Tribeca Green, and Other Rental Buildings" (the "Notice"), informing readers of the availability of compensatory funds. The Notice shall be no smaller than three columns by six inches and shall be published on three occasions in the *New York Daily News*. The three publication dates shall be separated from one another by twenty-one (21) days, and at least two of the publication dates shall be on a Sunday (or Saturday, if the newspaper is not published on Sunday). In addition, Related shall cause the Notice to be published on three (3) occasions by two New York-based disability organizations, The Center for Independence of the Disabled ("CIDNY") and United Spinal Association ("United Spinal"), in print and digital media (including on Facebook and Twitter), and through in-person outreach, pursuant to a written "Targeted Publication Plan," to be submitted by Related to the United States for approval. In order to ensure compliance with this provision, Related has retained the services of the Association of University Centers on Disabilities, a national network of interdisciplinary centers whose mission is to advance policies and practices designed to improve the health, education, and economic well-being of persons with developmental and other disabilities ("AUCD"). With the assistance of AUCD, Related has partnered with CIDNY and United Spinal to develop a strategy (a) to ensure targeted distribution of the Notice to more than three hundred thousand persons with disabilities, their family members, service providers and advocates, and (b) to advertise to persons with disabilities in need of accessible housing the availability of such housing in properties designed and constructed by Related. Within ten (10)

days of each publication of the Notice in a newspaper and by CIDNY, United Spinal, or AUCD, Related shall provide copies of the publication containing the Notice to the United States.

57. Within thirty (30) days of entry of this Consent Decree, Related shall place on the websites http://www.related.com/rentals/OneCarnegieHill/ and http://www.related.com/rentals/ TribecaGreen/ a link to an electronic version of the Notice in an Adobe Acrobat Portable Document Format ("PDF"). The link should state "Notice to Persons Who May Have Suffered from Inadequate Accessible Features at One Carnegie Hill and/or Tribeca Green," and should appear on the upper half of the website, in a conspicuous font style and color, in a font size no smaller than the font size for any of the terms "Green Design," "Floor Plans," "Residences," "Amenities," "Neighborhood," "Gallery," and "Contact" as they appeared on December 5, 2014.

58. Within thirty (30) days of entry of this Consent Decree, Related shall place, on any website maintained by Related with respect to any of the Recent Construction or Additional Properties, a link to an electronic version of the Notice in an Adobe Acrobat Portable Document Format ("PDF"). The link should state "Notice to Persons Who May Have Suffered from Inadequate Accessible Features at [the relevant Additional Property]," and should appear on the upper half of the website, in a font that is clearly visible, in a prominent font size.

59. Within thirty (30) days of the entry of this Consent Decree, Related shall send a copy of the Notice to each of the following organizations:

Brooklyn Center for Independence of the Disabled
27 Smith Street, Suite 200
Brooklyn, New York 11201;

Bronx Independent Living Services
4419 Third Avenue, Suite 2C
Bronx, New York 10457;

Center for Independence of the Disabled, NY
841 Broadway, #301
New York, New York 10003;

Disability Law Center at New York Lawyers for the Public Interest
151 W. 30th Street, 11th Floor
New York, New York 10001;

Disability Rights Advocates
1560 Broadway, 10th Floor
New York, New York 10036;

Fair Housing Justice Center
5 Hanover Square, 17th Floor
New York, New York 10004;

Harlem Independent Living Center
289 St. Nicholas Avenue, Suite 21, Lower Level
New York, New York 10027;

The Legal Aid Society of New York
199 Water Street
New York, New York 10038;

Legal Services NYC
350 Broadway, Sixth Floor
New York, New York 10016;

MFY Legal Services, Inc.
299 Broadway
New York, New York 10007; and

United Spinal Association
75-20 Astoria Blvd.
Jackson Heights, New York 11370.

60.     Within thirty (30) days of the entry of this Consent Decree, Related shall send, by

first-class mail, postage pre-paid, a copy of the Notice to each identifiable past or present

resident at One Carnegie Hill, Tribeca Green, the Recent Construction, and the Additional

Properties.  For past residents, Related will have complied with the requirements of this

paragraph by mailing such notice to the forwarding address provided by the former resident at

the time the former resident moved out of One Carnegie Hill, Tribeca Green, or the relevant

Recent Construction or Additional Property.  Within seventy-five (75) days of entry of this

Consent Decree, Related shall provide the United States with proof that the Notices have been sent.

61.     The United States may make its own efforts to locate and provide notice to potential aggrieved persons.

62.     Related shall permit the United States, upon reasonable notice, to review any records that may reasonably facilitate its investigations to locate allegedly aggrieved persons and make determinations regarding their potential claims. In addition, Related shall identify to the United States any allegedly aggrieved persons or any past, present, or prospective residents of One Carnegie Hill, Tribeca Green, the Recent Construction, or the Additional Properties who have disabilities or regular guests with disabilities, to the extent that Related, or their employees or agents at One Carnegie Hill, Tribeca Green, the Recent Construction, or the Additional Properties, possess the information required to make such identifications.

63.     The United States shall investigate the claims of allegedly aggrieved persons and shall determine which persons are aggrieved and an appropriate amount of damages that should be paid to each such person. The United States will inform Related in writing of each of its determinations, together with a copy of a sworn declaration from each aggrieved person setting forth the factual basis of the claim. If the United States determines that the Initial Settlement Fund is insufficient to compensate all aggrieved persons at One Carnegie Hill, Tribeca Green, the Recent Construction, and the Additional Properties, the United States shall be entitled to make determinations that award aggrieved persons, in the aggregate, a total amount exceeding the amount in the Initial Settlement Fund, but not exceeding ONE MILLION AND NINE HUNDRED THOUSAND DOLLARS ($1,900,000).

64.     If Related disputes the amount of a payment to an aggrieved person, Related shall, within fourteen (14) days of receiving notice of a determination from the United States (a

28

"Determination"), provide a written objection to the United States, along with any information or documents that they believe may refute the aggrieved person's claim. The United States shall give due consideration to any objections it receives from Related and shall submit, following any objection, its reconsidered determination (a "Reconsidered Determination") to Related, in writing, setting forth the aggrieved person and the amount that the aggrieved person shall be paid. If Related disputes the Reconsidered Determination, it may file an objection with the Court, which may sustain or overrule the objection.

65.     Related shall, no later than twenty (20) days after receiving a Determination to which no objection has been made, ten (10) days after receiving a Reconsidered Determination to which no objection has been filed with the Court, or ten (10) days after any decision by the Court overruling a filed objection, whichever is earliest, deliver to the United States checks payable to aggrieved persons in the amounts identified by the United States. In no event shall the aggregate of all such checks exceed the amount of one million and nine hundred thousand dollars ($1,900,000), including accrued interest. No aggrieved person shall be paid until he/she has executed and delivered to the United States the release at Appendix G.

66.     No adverse action shall be taken against any person because such person cooperates with the United States in its investigations, makes a claim, or seeks to make a claim under, Section XI of this Consent Decree.

67.     In the event that less than the total amount in the Initial Settlement Fund including accrued interest is distributed to aggrieved persons, and after the United States determines that no further aggrieved persons will be identified, then, no later than the earlier of (a) when the United States determines that no further aggrieved persons will be identified, or (b) the expiration of this Consent Decree, any remainder in the Initial Settlement Fund shall be distributed to a qualified organization(s) mutually agreed upon by the United States and Related,

subject to the approval of the court, for the purpose of conducting fair housing enforcement-related activities in New York City. Before selecting the qualified organization(s), Related will obtain a proposal from the organization(s) on how the funds will be used consistent with the above-stated purposes, submit such proposal to the United States, and consult with and obtain the non-objection of the United States. The United States and Related may request modification of the proposal before approving the organization(s). Related shall also require that the qualified organization(s) receiving funds submit to Related and the United States a detailed report on how the funds are utilized within one year of receipt of funds, and every year thereafter until the funds are exhausted. Related shall distribute the funds in a manner directed by the Court after the United States informs the Court that no further aggrieved persons will be identified.

## XII. CIVIL PENALTIES

68.     Within thirty (30) days of the date of the entry of this Consent Decree, Related shall pay a civil penalty of ONE HUNDRED THOUSAND DOLLARS ($100,000) pursuant to 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest. Related shall pay said sum by submitting a check made payable to the "United States of America" to the United States.

## XII. EDUCATIONAL PROGRAM

69.     Within thirty (30) days of the entry of this Consent Decree, each Settling Defendant shall provide a copy of this Consent Decree to all of its agents and employees involved in the design or construction of One Carnegie Hill, Tribeca Green, the Recent Construction, or the Additional Properties and secure the signed statement from each agent or employee acknowledging that he or she has received and read the Consent Decree, and has had an opportunity to have questions about the Consent Decree answered. This statement shall be substantially similar to the form of Appendix H.

70.     During the term of this Consent Decree, any new employee, agent, or supervisor of a Settling Defendant who will be involved in the design or construction of Covered Multifamily Dwellings shall, within thirty (30) days after the date he or she commences an agency or employment relationship with any Settling Defendant, be given a copy of this Consent Decree by such Defendant, and such Defendant shall require each such new agent or employee to sign a statement, acknowledging that he or she has received and read the Consent Decree, and has had an opportunity to have questions about the Consent Decree answered.  This statement shall be substantially similar to the form of Appendix H.

71.     Within 30 days of the entry of this Consent Decree, each Settling Defendant shall provide a copy of this Consent Decree to all their agents and employees involved in rental of units at One Carnegie Hill, Tribeca Green, the Recent Construction, or the Additional Properties, and/or the provision of services to residents at One Carnegie Hill, Tribeca Green, the Recent Construction, or the Additional Properties, and secure the signed statement from each agent or employee acknowledging that he or she has received and read the Consent Decree, and has had an opportunity to have questions about the Consent Decree answered.  This statement shall be substantially similar to the form of Appendix H.

72.     During the term of this Consent Decree, any new employee, agent, or supervisor of each Settling Defendant who will be involved in the renting of units at One Carnegie Hill, Tribeca Green, the Recent Construction, or the Additional Properties, and/or the provision of services to residents at One Carnegie Hill, Tribeca Green, the Recent Construction, or the Additional Properties shall, within 30 days after the date he or she commences an agency or employment relationship with any of the Settling Defendants, be given a copy of this Consent Decree by the relevant Settling Defendant, and that Settling Defendant shall require each such new agent or employee to sign a statement, acknowledging that he or she has received and read

31

the Consent Decree, and has had an opportunity to have questions about the Consent Decree answered. This statement shall be substantially similar to the form of Appendix H.

73.     In lieu of providing individuals or entities with copies of the Consent Decree as required by the preceding paragraphs of Section XIII, a Settling Defendant may instead provide a summary of the Consent Decree with the United States' advance written approval of the form and content of any proposed summary.

74.     The Settling Defendants shall also ensure that they and their employees and agents who have supervisory authority over the design and/or construction of Covered Multifamily Dwellings have a copy of, are familiar with, and personally have reviewed, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991), and the United States Department of Housing and Urban Development, Fair Housing Act Design Manual, A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act (August 1996, Rev. April 1998). The Settling Defendants and their employees and agents whose duties, in whole or in part, involve the management, sale and/or rental of multifamily dwellings at issue in this case shall be informed of those portions of the FHA that relate to accessibility requirements, reasonable accommodations and reasonable modifications.

75.     Within ninety (90) days of the date of entry of this Consent Decree, the Settling Defendants and all employees and agents whose duties, in whole or in part, involve or will involve supervision over the development, design and/or construction of multifamily dwellings of the type at issue in this case shall undergo training on the design and construction requirements of the FHA.[3] The training shall be conducted by a qualified third-party individual, not associated with any Settling Defendant or its counsel, and approved by the Department of

_____

[3]     The educational program provided to employees not engaged in design, construction, or maintenance, such as sales and rental employees, may focus on the portions of the law that relate generally to accessibility requirements as opposed to technical design and construction requirements.

32

Justice; and any expenses associated with this training shall be paid by the Settling Defendants. The Settling Defendants shall provide to the United States, thirty (30) days before the training, the name(s), address(es) and telephone number(s) of the trainer(s); and copies of any training outlines and materials to be distributed by the trainers. The Settling Defendants shall provide to the United States, thirty (30) days after the training, certifications executed by all Settling Defendants and covered employees and agents confirming their attendance, in a form substantially equivalent to Appendix I.

### XIII. NOTICE OF DEFENDANTS' NON-DISCRIMINATION POLICY

76.     Within ten (10) days of the date of entry of this Consent Decree, the Settling Defendants shall post and prominently display in the sales or rental offices of all Covered Multifamily Dwellings owned or operated by them, a sign no smaller than ten (10) by fourteen (14) inches indicating that all dwellings are available for rental on a nondiscriminatory basis. A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

77.     For the duration of this Consent Decree, in all future advertising in newspapers and electronic media, and on pamphlets, brochures and other promotional literature regarding the existing complexes or any new complexes that the Settling Defendants may develop or construct, the Settling Defendants shall place, in a conspicuous location, a statement that the dwelling units include features for persons with disabilities required by the federal FHA.

78.     One hundred and eighty (180) days after the date of entry of this Consent Decree, the Settling Defendants shall submit to the United States an initial report regarding the signed statements of the Settling Defendants' employees and agents who have completed the training program specified in paragraph 72 of this Consent Decree. Thereafter, during the term of this Consent Decree, the Settling Defendants shall, on the anniversary of the entry of this Consent Decree, submit to the United States a report containing the signed statements of new employees

and agents that, in accordance with paragraphs 70 and 72 of this Consent Decree, they have received and read the Consent Decree, and had an opportunity to have questions about the Consent Decree answered, except that the last report shall be due sixty (60) days prior to the anniversary.

79.     For the duration of this Consent Decree, the Settling Defendants shall advise the United States in writing within fifteen (15) days of receipt of any written administrative or judicial fair housing complaint regarding any property designed or constructed by them, or, to the extent known, against any employees or agents of the Settling Defendants working at or for any such property, regarding discrimination on the basis of disability in housing. Upon reasonable notice, the Settling Defendants shall also provide the United States all information it may request concerning any such complaint. The Settling Defendants shall also advise counsel for the United States, in writing, within fifteen (15) days of the resolution of any complaint.

80.     For the term of this Consent Decree, the Settling Defendants are required to preserve all records related to this Consent Decree for One Carnegie Hill, Tribeca Green, the Recent Construction, and the Additional Properties and any other Covered Multifamily Dwellings designed or constructed by them during the duration of this Consent Decree. Upon reasonable notice to the Settling Defendants, representatives of the United States shall be permitted to inspect and copy any records of the Settling Defendants or inspect any developments or residential units under the Settling Defendants' control bearing on compliance with this Consent Decree at any and all reasonable times, provided, however, that the United States shall endeavor to minimize any inconvenience to the Settling Defendants from such inspections.

## XV. LOW-INCOME HOUSING TAX CREDIT PROGRAM COMPLIANCE

81.     The Settling Defendants are hereby notified that, in the event that any Settling Defendant fails to comply with any of the terms of this Consent Decree and the United States obtains an order establishing such noncompliance, the United States may take any appropriate action, including but not limited to notifying the appropriate state housing finance agency of the violation.  See 26 U.S.C. § 42(m)(1)(B)(iii).

## XV. DURATION OF CONSENT DECREE AND TERMINATION OF LEGAL ACTION

82.     This Consent Decree shall, except as specified in paragraphs 35 and 46, remain in effect for four (4) years following entry of this Consent Decree by the Court.  By consenting to entry of this Consent Decree, the parties agree that in the event that the Settling Defendants engage in any future conduct occurring after entry of this Consent Decree that leads to a determination of a violation of the FHA, such conduct shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

83.     The Complaint in this action is hereby dismissed as to the Settling Defendants without prejudice to reinstatement in accordance with the next paragraph.

84.     The Complaint in this action shall be reinstated as to a Settling Defendant at any time during the term of this Consent Decree if the Court determines that such Defendant has failed to perform, in a timely manner, any act required by this Consent Decree or has otherwise failed to act in conformity with any provision of this Consent Decree.

85.     The Court shall retain jurisdiction for the duration of this Consent Decree to enforce the terms of the Consent Decree.  The United States may move the Court to extend the duration of the Consent Decree or in the interests of justice.  The duration of the Consent Decree also may be extended by the mutual written agreement of the United States and Related.

35

86.     The United States and the Settling Defendants shall endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Consent Decree prior to bringing such matters to the Court for resolution.  However, in the event of a failure by the Settling Defendants to perform, in a timely manner, any act required by this Consent Decree or otherwise for their failure to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or failure to perform.

87.     Upon the expiration of the Consent Decree and all obligations thereunder, the United States shall seek an order dismissing the Complaint with prejudice.

## XVII.  TIME FOR PERFORMANCE

88.     Any time limits for performance imposed by this Consent Decree may be extended by the mutual written agreement of the United States and the relevant Settling Defendants.

## XVIII.  MISCELLANEOUS

89.     The United States and each Settling Defendant will bear its own costs and attorney's fees associated with this litigation.

90.     The United States and the Settling Defendants understand and agree that this Consent Decree and the appendices thereto contain the entire agreement between them, and that any statements, representations, promises, agreements, or negotiation, oral or otherwise, between the parties or their counsel that are not included herein shall be of no force or effect.

The undersigned apply for and consent to the entry of this Consent Decree:

*For the United States*:

*For Settling Defendants Related, Upper East Lease Associates, LLC, and Tribeca Green, LLC*:

PREET BHARARA
United States Attorney

By: _____
LI YU
CARINA H. SCHOENBERGER
EMILY E. DAUGHTRY
JESSICA HU
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York  10007
Tel. Nos. (212) 637-2734/2822/2777/2726
Fax. Nos. (212) 637-2686/2702
Li.Yu@usdoj.gov
Carina.Schoenberger@usdoj.gov
Emily.Daughtry@usdoj.gov
Jessica.Hu@usdoj.gov

WACHTEL MISSRY LLP

By: _____
WILLIAM B. WATCHTEL
855 Second Avenue
New York, New York 10010
Tel. No. (212) 909-9595
Fax. No. (212) 237-0320
wachtel@wmllp.com

SPEARS & IMES LLP

By: _____
LINDA IMES
JOANNA C. HENDON
51 Madison Avenue
New York, New York 10010
Tel. No. (212) 213-6991
Fax. No. (212) 213-0849
limes@spearsimes.com
jhendon@spearsimes.com

SO ORDERED:

_____
HON. SHIRA A. SCHEINDLIN
UNITED STATES DISTRICT JUDGE

12/10/14

37

## APPENDIX A-1

## PUBLIC AND COMMON USE AREAS AT ONE CARNEGIE HILL

As soon as reasonably possible, but no later than 12 months from the entry of this Order, Defendants shall finish the retrofits identified in this Appendix A.

### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 2

#### ENTRANCE LOBBY

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 1. | Reception Counter | 42" to 48½" above finished floor ("AFF") | Will install a secondary counter at 34" AFF. |

#### MAIL ROOM – HIGH-RISE ROOM

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 2. | Mailboxes | Top row at $55^1/_8$" AFF | Will assign mailboxes that are 48" AFF max. to residents with disabilities. |
| | | | If such reassignment is not possible, will provide alternative mail service by building staff for any resident with a disability assigned to a mailbox more than 48" AFF. Specifically, the reception desk will arrange for daily mail delivery between 8:30 a.m. and 6:30 p.m. to the resident's apartment. |
| | | | Residents will be notified of the mailbox reassignment and alternative mail service procedures in writing; and notices of this procedure will be posted on building bulletin boards. |

#### MAIL ROOM – LOW-RISE ROOM

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 3. | Mailboxes | Top three rows at 66", 60½", and 55" AFF | Will assign mailboxes that are 48" AFF max. to residents with disabilities. |
| | | | If such reassignment is not possible, will provide alternative mail service by building staff for any resident with a disability assigned to a mailbox more than 48" AFF. Specifically, the reception desk will arrange for daily mail |

|  |  | delivery between 8:30 a.m. and 6:30 p.m. to the resident's apartment. |
|  |  | Residents will be notified of the mailbox reassignment and alternative mail service procedures in writing; and notices of this procedure will be posted on building bulletin boards. |

## MANAGEMENT OFFICE

|  | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 4. | Entrance door - Sign | No raised letters | Will provide raised letters and Braille. |
| 5. | Entrance door | Opening force – 10 lbs. | Will decrease opening force to 5 lbs. max. |

## BUSINESS CENTER

|  | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 6. | Entrance door -- Sign | No raised letters | Will provide raised letters and Braille. |
| 7. | Entrance door | Opening force – 7 lbs. | Will decrease opening force to 5 lbs. max. |
| 8. | Entrance door | Closing speed approximately 1.5 seconds | Will adjust closing speed to 3 seconds min. from 90 degrees open to 12 degrees open. |

## TRASH ROOMS

|  | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 9. | Door – threshold | 1" high on hallway side; $^{7}/_{8}$" high on trash room side; with 1:1 bevel | Will make flush; or ¼" high max.; or ½" high max., with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |
| 10. | Chute access panel – hardware | Chute door requires twisting to operate | Will replace with lever hardware that does not require twisting of the wrist to operate.
Alternatively, a 24/7 trash receptacle will be located in a safe and accessible location in close proximity to elevators, and will provide alternative trash pick-up by building staff at set times on a daily basis for any resident or guest with disabilities.  Residents will be notified of this procedure in writing; and |

2

|  |  |  | notices of this procedure will be posted on building bulletin boards. |
|---|---|---|---|

## CHILDREN'S PLAYROOM

|  | **ELEMENT** | **CONDITION** | **AGREED UPON RETROFIT** |
|---|---|---|---|
| 11. | Entrance door from the hallway - Sign | No raised letters | Will provide raised letters and Braille. |
| 12. | Entrance door | Opening force – 11 lbs. | Will decrease opening force to 5 lbs. max. |
| 13. | Sink clearance | No knee clearance for forward approach | Will remove cabinet under sink, reinforce countertop around sink, and provide pipe insulation. |
| 14. | Entrance door from Club Room – threshold | ⅞" high, with 1:1 bevel | Will make flush; or ¼" high max.; or ½" high max., with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |

## CHILDREN'S PLAYROOM – TOILET ROOM

|  | **ELEMENT** | **CONDITION** | **AGREED UPON RETROFIT** |
|---|---|---|---|
| 15. | Entrance door - Sign | No raised letters | Will provide raised letters and Braille. |
| 16. | Entrance door – threshold | ⅞" high, with 1:1 bevel | Will make flush; or ¼" high max.; or ½" high max., with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |
| 17. | Toilet – rear grab bar | No rear grab bar | Will install compliant rear grab bar. |
| 18. | Toilet – side grab bar | 24" long | Will install 42" min. grab bar. |
| 19. | Lavatory | No pipe insulation | Will install pipe insulation. |

## ROOF TERRACE

|  | **ELEMENT** | **CONDITION** | **AGREED UPON RETROFIT** |
|---|---|---|---|
| 20. | Door to the roof - Sign | No raised letters | Will provide raised letters and Braille. |
| 21. | Door to the roof - threshold | ⅞" high, with no bevel | Will make flush; or ¼" high max.; or ½" high max., with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold |

|     |                                  |                                        | extension with 8.33% max. running slope.                                                                |
| --- | -------------------------------- | -------------------------------------- | ------------------------------------------------------------------------------------------------------- |
| 22. | Door to the roof                 | Opening force – 11 lbs.                | Will decrease opening force to 8.5 lbs. max.                                                            |
| 23. | Door to the roof - clearance     | 15½" pull side latch clearance         | Will modify handrail to provide 18" min. pull side latch clearance.                                    |
| 24. | Ramp to terrace level            | Handrail only on one side of the ramp  | Will install compliant floor-mounted handrail.                                                         |

### ROOF TERRACE PARTY ROOM

|     | ELEMENT                                 | CONDITION                           | AGREED UPON RETROFIT                                                                                     |
| --- | --------------------------------------- | ----------------------------------- | ------------------------------------------------------------------------------------------------------- |
| 25. | Door to the vestibule from the hallway  | 17" pull side latch clearance       | Will move adjacent wall to reduce depth of closet and increase pull side latch clearance to 18" min.   |
| 26. | Vestibule door to the party room        | 16¾" pull side latch clearance      | Will move adjacent wall to reduce depth of closet and increase pull side latch clearance to 18" min.   |
| 27. | Vestibule door to the party room        | Opening force – 13 lbs.             | Will decrease opening force to 5 lbs. max.                                                              |
| 29. | Kitchenette – width                     | 37" wide at the refrigerator        | Will install low-profile refrigerator to increase width to 40" min.                                    |
| 29. | Kitchenette – sink                      | No knee clearance for forward approach | Will remove cabinet under sink, reinforce countertop around sink, and provide pipe insulation.         |
| 30. | Microwave oven                          | 57" AFF                             | Will relocate microwave to countertop.                                                                 |

### TOILET ROOM – ROOF TERRACE PARTY ROOM

|     | ELEMENT                      | CONDITION         | AGREED UPON RETROFIT                                         |
| --- | ---------------------------- | ----------------- | ----------------------------------------------------------- |
| 31. | Entrance door - Sign         | No raised letters | Will provide raised letters and Braille.                    |
| 32. | Entrance door – hardware     | Knob              | Will install lever hardware.                                |
| 33. | Toilet – seat height         | 15" AFF           | Will adjust toilet seat height to between 17" and 19" AFF.  |

4

| 34. | Toilet – side grab bar | Extends to 49" from rear wall | Will adjust grab bar to extend 54" min. from rear wall. |
| 35. | Lavatory | No pipe insulation | Will install pipe insulation. |
| 36. | Soap dispenser | 52" AFF to highest operating control, and only provides forward reach | Will lower to 48" max. AFF for forward reach. |

## SUN TERRACE – 3RD FLOOR

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 37. | Entrance door - Sign | No raised letters | Will provide raised letters and Braille. |
| 38. | Entrance door – threshold | ⅞" high, with no bevel | Will make flush; or ¼" high max.; or ½" high max., with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |
| 39. | Ramp to terrace level | Running slope of ramp 8.8% to 9.9%; and running slope 2.8% to 3.1% at landings | Will reduce running slope of ramp to 8.33% max., and adjust running slope to 2% max. at landings. |
| 40. | Playhouse – accessible route | 4" high level change | Will install curb ramp from wood deck and will install planter next to ramp. |

## CLUB ROOM

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 41. | Entrance door – Sign | No raised letters | Will provide raised letters and Braille. |
| 42. | Entrance door | Opening force – 8 lbs. | Will decrease opening force to 5 lbs. max. |
| 43. | Entrance door | Closing speed approximately 2 seconds | Will adjust closing speed to 3 seconds min. from 90 degrees open to 12 degrees open. |
| 44. | Exit sign near locker | Headroom 79¼" AFF | Will replace bracket with lower profile to increase headroom to 80" min. |

5

| rooms | | AFF. |
|---|---|---|

## RESIDENT STORAGE

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 45. | Entrance door - Sign | No raised letters | Will provide raised letters and Braille. |

## BICYCLE STORAGE

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 46. | Entrance door | Opening force – 17 lbs. | Will decrease opening force to 15 lbs. max. |
| 47. | Entrance door – Sign | No raised letters | Will provide raised letters and Braille. |

## LAUNDRY VALET

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 48. | Entrance door maneuvering clearance | 16½" pull side latch clearance | Will move door to increase pull side latch clearance to 18" min., or will remove door. |
| 49. | Entrance door | Opening force – 7 lbs. | Will decrease opening force to 5 lbs. max. |
| 50. | Transaction counter – height | 37¾" AFF | Will lower to between 28" and 34" AFF. |

## PARKING GARAGE

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 51. | Door from hallway to garage | Opening force – 18 lbs. | Will decrease opening force to 15 lbs. max. |
| 52. | Door from hallway to | 3½" push side latch | Will install two-leaf door to provide 12" min. push side latch clearance, or |

6

| | | | |
|---|---|---|---|
| | garage | clearance | will install automatic door opener. |
| 53. | Ramp to garage door – running slope | Running slope 8.6% to 12.6% | Will reduce running slope to 8.33% max. |
| 54. | Ramp to garage door | No handrails | Will install compliant handrails on both sides. |
| 55. | Door to elevator lobby | 6" push side latch clearance | Will install two-leaf door to provide 12" min. push side latch clearance, or will install automatic door opener. |
| 56. | Door to elevator lobby | Closing speed approximately 2 seconds | Will adjust closing speed to 3 seconds min. from 90 degrees open to 12 degrees open. |

**PET SPA**

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 57. | Entrance door - Sign | No raised letters | Will provide raised letters and Braille. |
| 58. | Entrance door | Closing speed approximately 2 seconds | Will adjust closing speed to 3 seconds min. from 90 degrees open to 12 degrees open. |
| 59. | Entrance door | Opening force – 17 lbs. | Will decrease opening force to 15 lbs. max. |
| 60. | Entrance door – threshold | 1" high, with no bevel | Will make flush; or ¼" high max.; or ½" high max., with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |
| 61. | Towel hooks | 63¾" AFF | Will lower to 48" max. AFF. |
| 62. | Drying station – operating controls | 67" AFF | Will lower to 48" max. AFF. |

**FITNESS CENTER**

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 63. | Drinking fountain | Knee clearance 25¾" AFF | Will raise to 27" AFF min. |

**MASSAGE ROOM**

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|

7

| 64. | Entrance door - Sign | No raised letters | Will provide raised letters and Braille. |
|---|---|---|---|
| 65. | Entrance door | Opening force – 10 lbs. | Will decrease opening force to 5 lbs. max. |
| 66. | Entrance door – threshold | $5/8$" high, with no bevel | Will make flush; or ¼" high max.; or ½" high max., with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |
| 67. | Vestibule door | Opening force – 10 lbs. | Will decrease opening force to 5 lbs. max. |
| 68. | Paper towel dispenser | 52" AFF | Will lower to 48" max. AFF. |

### MEN'S LOCKER ROOM

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 69. | Entrance door - Sign | No raised letters | Will provide raised letters and Braille. |
| 70. | Entrance door from the club room | Opening force – 9 lbs. | Will decrease opening force to 5 lbs. max. |
| 71. | Vestibule door | Opening force – 10 lbs. | Will decrease opening force to 5 lbs. max. |
| 72. | Vestibule door – threshold | ⅞" high, with no bevel | Will make flush; or ¼" high max.; or ½" high max., with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |
| 73. | Lavatory | No pipe insulation | Will install pipe insulation. |
| 74. | Lavatory | Counter at 35" AFF | Will lower to 34" AFF max. |
| 75. | Towel hooks – height | 58" AFF | Will replace towel hooks with accessible towel rods at 48" max. AFF and unobstructed clear floor space ("CLFS"). |
| 76. | Towel hooks – clear floor space. | CLFS obstructed by benches | Will replace towel hooks with accessible towel rods at 48" max. AFF and unobstructed CLFS. |
| 77. | Sauna – door | 23" clear width | Will adjust to provide 32" min. clear width. |
| 78. | Showers | No accessible shower compartment | Will provide one accessible roll-in or transfer-type shower compartment. |
| 79. | Toilet – seat height | 16½" AFF | Will adjust toilet seat height to between 17"and 19" AFF. |

8

| 80. | Hair dryer – height | 53" AFF | Will adjust to 44" max. AFF. |

## WOMEN'S LOCKER ROOM

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 81. | Entrance door - Sign | No raised letters | Will provide raised letters and Braille. |
| 82. | Vestibule door | Opening force – 10 lbs. | Will decrease opening force to 5 lbs. max. |
| 83. | Vestibule door – threshold | $^5/_8$" high, with no bevel | Will make flush; or ¼" high max.; or ½" high max., with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |
| 84. | Lavatory | No pipe insulation | Will install pipe insulation. |
| 85. | Lavatory | Counter at 35¼" AFF | Will lower to 34" AFF max. |
| 86. | Towel hooks – height | 68" AFF | Will replace towel hooks with accessible towel rods at 48" max. AFF and unobstructed CLFS. |
| 87. | Towel hooks – CLFS | CLFS obstructed by benches | Will replace towel hooks with accessible towel rods at 48" max. AFF and unobstructed CLFS. |
| 88. | Sauna – door | 23" clear width | Will adjust to provide 32" min. clear width. |
| 89. | Sauna – door | 14" pull side latch clearance | Will remove bench or install flip-down bench to increase pull side latch clearance to 18" min. |
| 90. | Showers | No accessible shower compartment | Will provide one accessible roll-in or transfer-type shower compartment. |
| 91. | Toilet compartment | 53¼" wide by 58¼" deep | Will reconfigure toilet compartment to increase width to 55¾" (the maximum obtainable width) and depth to 59" min. |
| 92. | Toilet – seat height | 16½" AFF | Will adjust toilet seat height to between 17" and 19" AFF. |
| 93. | Coat hooks | 70" AFF | Will adjust to 48" max. AFF. |

## SWIMMING POOL

| ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|

9

| 94. | Entrance door | Opening force – 8 lbs. | Will decrease opening force to 5 lbs. max. |
| 95. | Rinsing shower | Shower head 74" AFF | Will install hand-held shower at 48" max. AFF. |

## PILATES ROOM

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 96. | Entrance door | Opening force – 8 lbs. | Will decrease opening force to 5 lbs. max. |

## YOGA ROOM

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 97. | Entrance door | Opening force – 17 lbs. | Will decrease opening force to 5 lbs. max. |

10

**APPENDIX A-2**

**PUBLIC AND COMMON USE AREAS AT TRIBECA GREEN**

As soon as reasonably possible, but no later than 12 months from the entry of this Order, Defendants shall finish the retrofits identified in this Appendix A.

**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 2**

**MAIN ENTRANCE LOBBY**

|   | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 1. | Reception Desk | 43" above the finished floor ("AFF") | Will install a secondary counter at 34" AFF. |

**LEASING CENTER**

|   | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 2. | Entrance door - sign | Sign has no raised letters | Will provide raised letters and Braille. |
| 3. | Video screen | Protrudes 7½" at 40" AFF | Will install a cane-detectable barrier under video screen. |

**RESIDENT SERVICE CENTER**

|   | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 4. | Entrance door - sign | Sign has no raised letters | Will provide raised letters and Braille. |

**MAIL ROOM**

|   | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 5. | Mailboxes | Top 3 rows at 66¼", 60¾" and 55" AFF | Will assign mailboxes that are 48" AFF max. to residents with disabilities. If such reassignment is not possible, will provide alternative mail service by building staff for any resident with a disability assigned to a mailbox more than 48" AFF.  Specifically, the reception desk will arrange for daily mail delivery between 8:30 a.m. and 6:30 p.m. to the resident's apartment. |

| | | Residents will be notified of the mailbox reassignment and alternative mail service procedures in writing; and notices of this procedure will be posted on building bulletin boards. |
|---|---|---|

### UNISEX BATHROOM NEAR ENTRANCE

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 6. | Sign | No raised letters | Will provide raised letters and Braille. |
| 7. | Toilet side grab bar | 36" long | Will increase grab bar length to 42" min. |
| 8. | Toilet clearance | 35¼" between side wall and lavatory | Will provide at least 36" min. clearance. |
| 9. | Toilet - seat cover dispenser | Dispenser control is 69½" AFF; paper outlet is 61" AFF; Clear floor space ("CLFS") is obstructed by the toilet | Will lower dispenser control to 48" max. AFF; will provide unobstructed CLFS at the dispenser. |
| 10. | Sink | Centerline is 13½" from the side wall | Will relocate sink to provide 15" min. from sink to sidewall with compliant knee and toe space at the lavatory. |
| 11. | Sink - faucet controls | Dial-type controls | Will install hardware that does not require tight grasping, tight pinching, or twisting of the wrist to operate. |
| 12. | Soap dispenser | 57" AFF | Will lower to 48" max. AFF. |
| 13. | Mirror | 48¾" AFF | Will lower to 40" max. AFF to the bottom edge of the reflecting surface. |
| 14. | Paper towel dispenser | 61½" AFF | Will lower to 48" max. AFF. |

### LAUNDRY ROOMS - 3RD THROUGH 16TH FLOORS

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 15. | Entrance door - sign | Sign has no raised letters | Will provide raised letters and Braille. |
| 16. | Entrance door (11th floor) | Closing speed approximately 2 seconds | Will adjust closing speed to 3 seconds min. from 90 degrees open to 12 degrees open. |

| | | | |
|---|---|---|---|
| 17. | Sink - clearance | Knee clearance 23" AFF | Will modify or remove apron to provide knee clearance of 27' min. AFF. |
| 18. | Sink - pipe insulation | No pipe insulation | Will install pipe insulation. |
| 19. | Sink - counter | 36" AFF | Will lower to 34" max. AFF. |
| 20. | Washing machines - controls | 26¼" reach to controls | Will relocate or replace washing machine to achieve 24" max. reach depth. |

## TRASH ROOMS

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 21. | Entrance door, hallway to vestibule - sign (All) | Sign has no raised letters | Will provide raised letters and Braille. |
| 22. | Entrance door, hallway to vestibule – threshold (26th floor only) | ⅜" high on hallway side; no bevel | Will make flush; or ¼" high max.; or ½" high max. with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |
| 23. | Entrance door, hallway to vestibule - threshold (3rd through 25th floors) | 1" high on vestibule side; no bevel | Will make flush; or ¼" high max.; or ½" high max. with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |
| 24. | Entrance door, vestibule to trash room - sign (All) | Sign has no raised letters | Will provide raised letters and Braille. |
| 25. | Entrance door, vestibule to trash room - threshold (All) | ⅝" to ⅞" high on the vestibule side; no bevel; ½" to ⅝" high on the trash room side; no bevel | Will make flush; or ¼" high max.; or ½" high max. with 1:2 bevel. Alternatively, and upon agreement of the Government, will install a threshold extension with 8.33% max. running slope. |
| 26. | Entrance door, vestibule to trash room (4th floor only) | Opening force of 22 lbs. | Will decrease opening force to 5 lbs. max. |

3

| 27. | Chute access door (All) | Hardware requires twisting to open chute door | A 24/7 trash receptacle will be located in a safe and accessible location in close proximity to elevators. |
|---|---|---|---|
| | | | In addition, will provide alternative trash pick-up by building staff at set times on a daily basis for any resident or guest with disabilities. Residents will be notified of this procedure in writing; and notices of this procedure will be posted on building bulletin boards. |
| 28. | Hanger rod (All) | 69" AFF | Will lower to 54" max. AFF for side reach; 48" max. AFF for forward reach. |

## CHILDREN'S PLAYROOM

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 29. | Entrance door - sign | Sign has no raised letters | Will provide raised letters and Braille. |
| 30. | Entrance door | Closing speed approximately 2 seconds | Will adjust closing speed to 3 seconds min. from 90 degrees open to 12 degrees open. |
| 31. | Hand sanitizer | 55" AFF | Will lower to 48" max. AFF. |
| 32. | Kitchenette - sink | No knee clearance for forward approach | Will remove cabinet under sink, reinforce countertop around sink, and provide pipe insulation. |
| 33. | Toilet - grab bars | No side or rear grab bars | Will install compliant side and rear grab bars. |
| 34. | Toilet room - toilet paper dispenser | 36" to 40" from the rear wall | Will adjust to 36" max. from rear wall. |
| 35. | Toilet room - sink | Obstructed forward approach | Will provide unobstructed knee and toe clearance. |
| 36. | Toilet room - mirror | 49½" AFF | Will lower to 40" max. AFF to the bottom edge of the reflecting surface. |
| 37. | Toilet room - infant changing table | 38½" AFF | Will lower to 34" max. AFF. |

4

## ENTERTAINMENT LOUNGE

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 38. | Sign | Sign has no raised letters | Will provide raised letters and Braille. |
| 39. | Entrance door | 10" push side latch clearance | Will increase push side latch clearance to 12" min. or provide automated door opener. |
| 40. | Entrance door | 14" pull side latch clearance | Will increase pull side latch clearance to 18" min. or provide automated door opener. |

## ENTERTAINMENT LOUNGE KITCHENETTE

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 41. | Sink - clearance | No knee clearance for forward approach | Will provide forward approach with compliant knee and toe clearance and pipe insulation. |
| 42. | Kitchen - width | 33" wide at the range; 36½" to 38" between base cabinets | Will relocate island to increase width to 40" min. |
| 43. | Kitchen - electrical outlet | 46⅞" AFF | Will lower to 46" AFF max., or install permanent power strip at 46" AFF max, as measured to the centerline of highest outlet. |

## FITNESS CENTER

| | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 44. | Entrance door - sign | Sign has no raised letters | Will provide raised letters and Braille. |
| 45. | Entrance door - clearance | 16" pull side latch clearance | Will increase pull side latch clearance to 18" min., or will install automatic door opener. |
| 46. | Paper towel dispenser | 64¼" AFF | Will lower to 48" max. AFF. |
| 47. | Drinking fountain | Knee clearance 26½" AFF | Will increase knee clearance to 27" AFF min. |

## BICYCLE STORAGE/ATM/GARAGE ACCESS AREAS

|  | ELEMENT | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 48. | Door from main hallway - sign | Sign has no raised letters. | Will provide raised letters and Braille. |
| 49. | Laundry card kiosk | 62" AFF | Will lower to 48" max. AFF. |
| 50. | Bicycle storage door - sign | Sign has no raised letters | Will provide raised letters and Braille. |
| 51. | Bicycle storage door - clearance | 5" push side latch clearance | Will reverse door swing. |
| 52. | Door to Warren Street | 5¼" push side latch clearance | Will install sign stating that door is not for resident use and directing residents to accessible entrance. |
| 53. | Door to Warren Street | Opening force of 17 lbs. | Will decrease opening force to 8.5 lbs. max. |

6

## APPENDIX B-1
## UNIT RETROFITS AT ONE CARNEGIE HILL

### CLEAR OPENING WIDTH OF DOORS
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 3, SEC. (2)

|   | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---------|-----------|----------------------|
| 1. | All units below Floor 23 | Clear width is only 31⅛" to 31¼", and door leaf typically only 33½" to 33⅝" | Will increase clear width to 31⅝" min., with the use of swing-clear offset door hinges or otherwise, upon the request of a resident or prospective resident. |

### UNIT ENTRANCE DOOR THRESHOLD
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (4)

|   | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---------|-----------|----------------------|
| 2. | All units below Floor 23 | Threshold is 1" high on the hallway side | Will make flush; or provide ¼" max. threshold, if not beveled; or provide ½" high max. threshold, beveled at ratio of 1:2 max. Alternatively, and upon agreement of the Government, will install threshold extensions with 8.33% max. running slopes. Retrofit will be made upon the request of a resident or prospective resident, upon the replacement of the hallway carpet, or within one year of the effective date of the Consent Decree, whichever comes earliest. |

### BATHROOM MARBLE THRESHOLD
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (4)

|   | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---------|-----------|----------------------|
| 3. | All units below Floor 23 | Bathroom marble threshold is ⅝" high, with 1:1 bevel | Will make flush; or provide ¼" max. threshold, if not beveled; or provide ½" high max. threshold, beveled at ratio of 1:2 max in one bathroom in each unit. Alternatively, and upon agreement of the Government, will install threshold extensions with 8.33% max. running slopes in one bathroom in each unit. In 50% of the units, retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within two years of the effective date of the Consent |

|  |  | Decree, whichever comes earliest.  In the remaining 50% of the units, retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |
|---|---|---|

## TERRACE DOOR THRESHOLD
## FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (4)

|  | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 4. | 3E, 3G, 3H, 3L, 4B, 4C, 4D, 4P, 4Q, 4R | Interior thresholds 1¼" to 1⅞" high, without bevel | Will install a lift or a compliant ramp upon the request of a resident or prospective resident. |
| 5. | 3E, 3G, 3H, 3L, 4B, 4C, 4D, 4P, 4Q, 4R | Level change on exterior side of terrace door is at least 10¼" | Will install a lift or a compliant ramp upon the request of a resident or prospective resident. |

## ELECTRICAL OUTLETS – LIVING ROOM AND BEDROOM
## FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 5

|  | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 6. | 4C-22C, 4D-22D, 3E-22E, 22K, 3L-22L, 3M-22M, 3N-22N, 3P-21P, 4Q-21Q | Less than 15" above finished floor ("AFF") | For outlets that are not below window sills less than 15" AFF or outlets not dedicated to mechanical equipment, will move outlets, install new outlets, or provide wall-mounted power strips such that the outlets are at or above 15" AFF. [1]  Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within two years of the effective date of the Consent Decree, whichever comes earliest. |

---

[1]  Related has previously identified, in a chart dated July 10, 2014, which outlets cannot be retrofitted in representative units in each of the affected lines because of their location relative to a window or mechanical equipment.

2

**ELECTRICAL OUTLETS – KITCHEN**
**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 5**

| | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 7. | All units below Floor 23 | Outlets over counters 46¾" to 47" AFF | Will move outlets, install new outlets, or provide wall-mounted power strips such that outlets are at or below 46" max. AFF, measured to the centerline of the highest receptacle. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |
| 8. | 4B-21B, 15-22C, 3L-22L, 4Q-8Q | 3½" to 10¾" from the side wall or refrigerator, measured to the centerline of the outlets. | Will move outlets, install new outlets, or provide wall-mounted power strips such that distance from the side wall or refrigerator measured to the centerline of the outlets is 12" min. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within two years of the effective date of the Consent Decree, whichever comes earliest. |

**RADIATORS**
**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 5**

| | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 9. | 22K, 3M-21M, 3N-22N | Operating control lower than 15" AFF | Building attendant will be available 24/7 to adjust temperature control. Residents will be notified of building attendant contact information and temperature adjustment service in writing; and notices of this service will be posted on building bulletin boards. |

**KITCHEN CLEARANCE**
**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (1)(b)**

| | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 10. | 4B-21B, 4C-14C, 3N-22N, 4Q-21Q | Less than 40" min. width at refrigerator | Will install low-profile refrigerator to provide 40" min. width. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |

3

| 11. | 4A-22A, 4D-22D, 3E-22E, 3G-21G, 22J, 3L-22L, 3M-22M, 4P-21P, 4R-21R, 3T | Less than 40" min. width at refrigerator | In a total of 35 units (including 10 studio units, 15 one-bedroom units, and 10 two-bedroom units), will install low-profile refrigerator to provide 40" min. width.  Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest.<br><br>For the remaining units, will install low-profile refrigerator to provide 40" min. width upon the request of a resident or prospective resident. |
| --- | --- | --- | --- |
| 12. | 3G-22G, 3P | Centerline of range in corner location is less than 24" from sidewall | Will make adjacent wall flush with countertop edge to achieve centerline of at least 24" from any obstruction.  Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |
| 13. | 4A-22A, 3J-22J, 4P-21P | Centerline of sink in corner location is less than 24" from sidewall | Will adjust centerline to at least 24" from side wall for a centered side approach, will make adjacent wall flush with countertop edge to achieve centerline of at least 24" from any obstruction, or will install base cabinets that are removable by design with compliant knee and toe space at the sink, finished wall and floor beneath, and covered pipes. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |
| 14. | 4C-22C, 4D-22D, 3G-22G, 3L-22L, 3M-22M, 4P-21P, 4Q-21Q, 4R-21R | Centerline of sink in corner location is less than 24" from sidewall | In a total of 48 units (all of which shall have kitchens with 40" min. width), will make adjacent wall flush with countertop edge to achieve centerline of at least 24".  Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest.<br><br>For the remaining units, will make adjacent wall flush with countertop edge to achieve centerline of at least 24" upon the request of a resident or prospective resident. |

4

**BATHROOM CLEARANCE**
**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (2)(a)(i)**

| | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 15. | 4Q-21Q | Clear floor space ("CLFS") beyond door swing less than 30" wide min. by 48" long min. | Will reverse door swing to increase CLFS in one bathroom in each unit. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within one year from the effective date of the Consent Decree, whichever comes earliest. |
| 16. | 4A-21A, 4B-22B, 4D-22D, 22F, 22G, 3J-22J, 3L-22L, 3M-22M, 22N, 3P-21P, 4R-21R, 3T | Clear floor space ("CLFS") beyond door swing less than 30" wide min. by 48" long min. | Will reverse door swing to increase CLFS upon the request of a resident or prospective resident. |

**BATHROOM – TOILETS AND LAVATORY**
**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (2)(a)(ii)**

| | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 17. | 4A-22A, 4B-22B, 4C-22C, 4D-22D, 3E-22E, 3G-22G, 3J-22J, 3L-22L, 3M-22M, 3N-22N, 3P-21P, 4Q-21Q, 4R-21R, 3T | Lavatory centerline is less than 24" from bathtub with no removable base cabinet, and/or there is less than 24" clearance between sidewall and lavatory base cabinet | In a total of 90 units (including 22 studio units, 41 one-bedroom units, and 27 two-bedroom units), will install base cabinets that are removable by design with compliant knee and toe space at the lavatory, finished wall and floor beneath, and covered pipes. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest.

For the remaining units, will install base cabinets that are removable by design with compliant knee and toe space at the lavatory, finished wall and floor beneath, and covered pipes upon the request of a resident or prospective resident. |

5

**APPENDIX B-2**

**UNIT RETROFITS AT TRIBECA GREEN**

**CLEAR OPENING WIDTH OF DOORS**
**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 3, SEC. (2)**

| | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 1. | All units (including optional bedroom doors in 17A-26A and terrace doors in 17B, 17C, and 17D) | Clear width is only 30¼" to 31⅛"; and door leaf typically only 33¼" to 33½" wide. | Will increase clear width to 31⅝" min., with the use of swing-clear offset door hinges or otherwise, upon the request of a resident or prospective resident. |

**UNIT ENTRANCE DOOR THRESHOLD**
**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (2)**

| | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 2. | 3J-16J | 1" high on hallway side, with ½" abrupt level change to base of the bevel | Will make flush; or provide ¼" high max. threshold, if not beveled; or provide ½" high max. threshold, beveled at ratio of 1:2 max. Alternatively, and upon agreement of the Government, will install threshold extensions with 8.33% max. running slopes. |
| | | | Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within one year of the effective date of the Consent Decree, whichever comes earliest. |

**BATHROOM DOOR THRESHOLD**
**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (2)**

| | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 3. | 3A-16A, 8F-16F, 5K-16K, 3O-16O | ¼" to 1" high, with ⅜" to ½" abrupt level change to base of bevel | Will make flush; or provide ¼" high max. threshold, if not beveled; or provide ½" high max. threshold, beveled at ratio of 1:2 max in one bathroom in each unit. Alternatively, and upon agreement of the Government, will install threshold extensions with 8.33% max. running slopes in one bathroom in each unit. |

|  |  | In 23 units, retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within two years of the effective date of the Consent Decree, whichever comes earliest. In the remaining 22 units, retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |
| --- | --- | --- |

## KITCHEN ENTRY THRESHOLD
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (2)

|  | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
| --- | --- | --- | --- |
| 4. | 17B-26B | ¾" to 1" high, beveled at 1:1.5 ratio | Will make flush; or provide ¼" high max. threshold, if not beveled; or provide ½" high max. threshold, beveled at ratio of 1:2 max. Alternatively, and upon agreement of the Government, will install threshold extensions with 8.33% max. running slopes. |
|  |  |  | In 5 units, retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within two years of the effective date of the Consent Decree, whichever comes earliest. In the remaining 5 units, retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |

## TERRACE DOOR THRESHOLD – EXTERIOR SIDE
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 4, SEC. (4)

|  | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
| --- | --- | --- | --- |
| 5. | 17A, 17B, 17C, 17D | Steps up to terrace door presenting level changes of 15" to 16" | Will install a lift or a compliant ramp upon the request of a resident or prospective resident. |

## LIGHT SWITCHES
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 5

| | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 6. | All units | Typically mounted at 49½" above finished floor ("AFF"), as measured to the highest operable part | Will lower master switches to 48" max. AFF, measured to the highest operable part, upon the request of a resident or prospective resident. |

## THERMOSTAT
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 5

| | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 7. | 17A-26A, 17B-26B, 17D-26D, 31-16I, 5K-16K | Typically mounted at 54" to 54½" AFF, as measured to the highest operable part | Will adjust thermostats to 48" max. AFF, measured to the highest operable part. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |

## KITCHEN OUTLETS
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 5

| | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 8. | 3A-16A, 17A-26A, 17D-26D, 8F-16F, 3G-16G, 5K-16K, 3L-16L, 3R-16R | 9¼" to 11" from the side wall, refrigerator, or sink, as measured to the centerline of the outlets | Will move outlets, install new outlets, or provide wall-mounted power strips such that distance from the side wall, refrigerator, or sink measured to the centerline of the outlets is 12" min. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |
| 9. | All units except 3A-16A | 46½" to 47¼" AFF, as measured to centerline of the highest receptacle. | Will move outlets, install new outlets, or provide wall-mounted power strips such that the outlets are at 46" max. AFF, measured to the centerline of the highest receptacle. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |

3

**BATHROOM – OBSTRUCTION OF GRAB BAR LOCATION**
**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 6**

| | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 10. | 3A-16A, 3B-16B, 3C-16C, 3D-16D, 3E-16E, 3G-16G, 3H-16H, 3I-16I, 3J-16J, 3N-16N, 3P-16P, 3R-16R, and 5K-16K (hall and master bathrooms);, , 3L-16L, 3O-16O, 3Q-16Q, 8F-16F | Banjo counter top obstructs location of toilet rear grab bar | In a total of 70 units (including 17 studio units, 35 one-bedroom units, and 18 two-bedroom units), will remove banjo countertops from one bathroom and replace with countertops that do not obstruct the rear grab bar location. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest.<br><br>For the remaining units, will remove the banjo countertops and replace with countertops that do not obstruct the rear grab bar location upon the request of a resident or prospective resident. |
| 11. | 8F-16F, 3G-16G, 3O-16O | Side walls only 18⅝" or 23" long, insufficient for installation of 24" grab bar | Will install "L shape" or diagonal grab upon the request of a resident or prospective resident. To achieve installation, will reinforce sidewall or, if feasible, utilize specialized fasteners designed to withstand the force required to use grab bars. |

**KITCHEN SINKS PROVIDE INSUFFICIENT CLEARANCE**
**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (1)(a)**

| | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 12. | 3B | Sink centerline 21" from side wall | Will provide for 24" min. centerline from the sidewall. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |
| 13. | 3Q-16Q | Sink centerlines 7" from adjacent base cabinet | For five units, will modify sinks to provide centerline of 15" min. with base cabinets that are removable by design with compliant knee and toe space under the sink, finished wall and floor beneath, and covered pipes. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest.<br><br>For the remaining units, will modify sinks to provide centerline of 15" min. with base cabinets that are removable by design with compliant knee and |

4

| | | toe space under the sink, finished wall and floor beneath, and covered pipes, upon the request of a resident or prospective resident. |
|---|---|---|

### KITCHEN CLEARANCE
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (1)(b)

| | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 14. | 3B-26B, 3M-16M | Less than 40" min. width at refrigerator and range | Will install low-profile refrigerator, and adjust electric/gas hookup at the range and push back the range to provide 40" min. width. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |
| 15. | 3C-16C | Less than 40" min. width at refrigerator and range | Will install low-profile refrigerator and range to provide 40" min. width upon the request of a resident or prospective resident. |
| 16. | 3D-16D, 3J-16J | Less than 40" min. width at refrigerator and dishwasher | Will install low-profile refrigerator and dishwasher to provide 40" min. width upon the request of a resident or prospective resident. |
| 17. | 17A-26A, 17-26C, 17D-26D, 3H-16H, 3O, 3R-16R | Less than 40" min. width at refrigerator | Will install low-profile refrigerator to provide 40" min. width. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |
| 18. | 3E-16E, 8F-16F, 3G-16G, 5K-16K, 3L-16L, 3N-16N, 4O-16O, 3P-16P | Less than 40" min. width at refrigerator | Will install low-profile refrigerator to provide 40" min. width upon the request of a resident or prospective resident. |

### KITCHEN CLEARANCE
### FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (1)(c)

| | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 19. | 3Q-16Q | Less than 60" between base cabinet and refrigerator | Will install a low-profile refrigerator. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |

**BATHROOM CLEARANCE**
**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (2)(a)(i)**

| | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 20. | 3B-16B, 3D-16D, 3I-16I, 5K-16K (hall and master bathrooms), 3L-16L | Clear floor space ("CLFS") beyond door swing less than 30" wide and/or less than 48" long | Will reverse the door swing in one bathroom in each unit.  Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |
| 21. | 3A-16A, 3E-16E, 3G-16G, 3H-16H, 3J-16J, 3N-16N (hall bathrooms), 3P-16P (master bathrooms), 3R-16R | Clear floor space ("CLFS") beyond door swing less than 30" wide and/or less than 48" long | Will reverse the door swing upon the request of a resident or prospective resident. |
| 22. | 3M-16M | Shower CLFS less than 30" wide min. | Will remove the shower and provide an accessible bathtub (with shower) upon the request of a resident or prospective resident. |

**BATHROOM LAVATORIES**
**FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (2)(a)(ii)**

| | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|---|---|---|---|
| 23. | 3M-16M (lavatory right) | Centerlines less than 24" from bathtub with no removable base cabinet, and/or there is less than 24" clearance between sidewall and lavatory base cabinet | Will install base cabinets that are removable by design with compliant knee and toe space at the lavatory, finished wall and floor beneath, and covered pipes upon the request of a resident or prospective resident. |
| 24. | 3L-16L | 31½" clearance between side wall and lavatory | In a total of four units, will install smaller vanity to provide 33" min. clearance between side wall and lavatory.  Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest.<br><br>For the remaining units, will install smaller vanity to provide 33" min. |

|    |    |    | clearance between side wall and lavatory upon the request of a resident or prospective resident. |
|----|----|----|----|
| 25. | All units | Knee clearance of 25" AFF at 8" in from the front, and 22" clear width between side supports | Will modify apron to provide knee clearance of 27" min. AFF at 8" in from the front. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |

## BATHROOM TOILETS
## FAIR HOUSING ACCESSIBILITY GUIDELINES REQUIREMENT 7, SEC. (2)(a)(ii)

|    | UNIT(S) | CONDITION | AGREED UPON RETROFIT |
|----|---------|-----------|----------------------|
| 26. | 3E-16E, 8F-16F, 3I-16I (hall bathrooms) | Centerlines 15½" from side wall | Will install offset flanges to move toilets as close to between 16" and 18" away from the side walls as the flanges will permit. Retrofit will be made upon the request of a resident or prospective resident, upon vacancy, or within the term of the Consent Decree, whichever comes earliest. |

7

**APPENDIX C**

**NOTICE OF RETROFITS TO PUBLIC AND COMMON USE AREAS**
**OF ONE CARNEGIE HILL AND TRIBECA GREEN**

To Our Residents and Prospective Residents:

      Federal law requires that the public and common use areas at One Carnegie Hill/ Tribeca Green contain accessibility features for persons with disabilities. Within the next twelve months, we will be undertaking a program of retrofits to the public and common use areas to make them more accessible to persons with disabilities. A list of mandatory retrofits we will be undertaking is available at the leasing office. We do not anticipate that current residents will have to be relocated during the term of their tenancy or that prospective residents will have their move-in dates delayed because of the retrofits we will be undertaking.

      Should you have questions regarding this letter, please contact the leasing office at One Carnegie Hill or Tribeca Green, or the United States Attorney's Office, Southern District of New York, at (212) 637-0840.

Sincerely,
The Related Companies

## APPENDIX D

## NOTICE TO RESIDENTS OR PROSPECTIVE RESIDENTS
## OF RETROFITS FOR ONE CARNEGIE HILL OR TRIBECA GREEN,
## WHICH MUST BE SCHEDULED WITHIN THE NEXT SIX MONTHS

One Carnegie Hill/Tribeca Green is dedicated to the principle of equal housing opportunity. The federal Fair Housing Act requires that apartments in newer apartment communities have certain features of physical accessibility for people with disabilities.

This is to advise you that, as a result of a settlement in a case brought by the United States against the developers and designers of this apartment complex, we have agreed to modify, by varying degrees, certain apartments at One Carnegie Hill/Tribeca Green to provide greater accessibility for people with disabilities. Your unit or prospective unit is one of those that has been identified as appropriate for certain retrofits. We want you to know that you may request to have your apartment, or prospective apartment, modified now at no cost to you. Should you have to move out temporarily, we will pay reasonable relocation and housing expenses while the modifications are being made.

Depending on the particular features in your unit, the modifications may include:

- Modification of door entries and thresholds to ensure accessibility to persons in wheelchairs;

- Modification of bathrooms to ensure accessibility to persons in wheelchairs;

- Modification of kitchen appliances to ensure usability by persons with disabilities; or

- Lowering of electrical outlets or installation of power strips.

While you do not have to request the modifications now, you should be aware that some of this work may be required at some point during the term of your lease. A representative will be contacting you soon to review these modifications and to discuss a time frame within which these modifications may be made.

If you have any questions, please contact us at the management office.

## APPENDIX E

## ADDITIONAL PROPERTIES

| Name | Number of Buildings | Location | Related Companies, L.P. Affiliate to Perform Section IV Undertakings |
|---|---|---|---|
| MiMA | 1 | 450 West 42nd Street New York, NY 10036 | 42nd and 10th Associates, L.L.C. |
| One MiMA Tower | 1 | 460 West 42nd Street New York, NY 10036 | MiMA Tower Associates, L.L.C. |
| The Strathmore | 1 | 400 East 84th Street New York, NY 10028 | 400 East 84th Street Associates, L.P. |
| One Union Square South | 1 | 1 Union Square South New York, NY 10003 | 14th Street Associates, L.P. |
| The Tate | 1 | 535 West 23rd Street New York, NY 10011 | 23rd Chelsea Associates, L.L.C. |
| The Caledonia | 1 | 450 West 17th Street New York, NY 10011 | 17th and 10th Associates LLC |
| The Westport | 1 | 500 West 56th Street New York, NY 10019 | 55th Clinton Associates, L.L.C. |
| The Sierra | 1 | 130 West 15th Street New York, NY 10011 | Armory Place, L.L.C. |
| Tribeca Park | 1 | 400 Chambers Street New York, NY 10282 | BPC Associates, L.P. |
| The Westminster | 1 | 180 West 20th Street New York, NY 10011 | 20th and Seventh Associates, L.L.C. |
| The Lyric | 1 | 255 West 94th Street New York, NY 10025 | Related Broadway Development, L.L.C. |
| Riverwalk Crossing | 1 | 405 Main Street New York, NY 10044 | Riverwalk 6, LLC |

**APPENDIX F**

**NOTICE TO PERSONS WHO MAY HAVE SUFFERED FROM INADEQUATE ACCESSIBLE FEATURES AT ONE CARNEGIE HILL, TRIBECA GREEN, AND OTHER RENTAL BUILDINGS**

On _____ 2014, the United States District Court for the Southern District of New York entered a consent decree resolving a lawsuit brought by the United States Department of Justice against certain builders and developers alleging that they failed to include certain accessible features for persons with disabilities required by the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(c), in the design and construction of One Carnegie Hill and/or Tribeca Green.

Under this consent decree, a person may be entitled to receive monetary relief if, in relation to any of the properties identified below, he or she:

• WAS DISCOURAGED FROM LIVING AT THAT PROPERTY BECAUSE OF THE LACK OF ACCESSIBLE FEATURES;

• HAS BEEN HURT IN ANY WAY BY THE LACK OF ACCESSIBLE FEATURES AT THAT PROPERTY;

• PAID TO HAVE AN APARTMENT AT THAT PROPERTY MADE MORE ACCESSIBLE TO PERSONS WITH DISABILITIES; OR

• WAS OTHERWISE DISCRIMINATED AGAINST ON THE BASIS OF DISABILITY AT THAT PROPERTY.

The properties relevant to this notice are:

| | |
|---|---|
| • ONE CARNEGIE HILL | • THE CALEDONIA |
| • TRIBECA GREEN | • THE WESTPORT |
| • MIMA | • THE SIERRA |
| • ONE MIMA TOWER | • TRIBECA PARK |
| • THE STRATHMORE | • THE WESTMINSTER |
| • ONE UNION SQUARE SOUTH | • THE LYRIC |
| • THE TATE | • RIVERWALK CROSSING |

If you wish to make a claim for discrimination on the basis of disability, or if you have any information about persons who may have such a claim, please contact the United States Attorney's Office, Southern District of New York at 212-637-2800. You

may also fax us at 212-637-2702 or write to:

United States Attorney's Office, Southern District of New York
Attn: Civil Rights Unit
86 Chambers Street
New York, New York 10007

NOTE: You must call or write no later than _____, 20__.

**APPENDIX G**

**RELEASE FORM**

      In consideration of the payment of the sum of _____ dollars ($_____), pursuant to the Consent Decree entered in *United States of America v. Related Companies L.P. et al.*, 14 Civ. 1826 (SAS) (S.D.N.Y.), I hereby release _____ from any and all liability for any claims, legal or equitable, I may have against them arising out of the issues alleged in the above-styled action.

      I fully acknowledge and agree that this release of the above-named parties shall be binding on my heirs, representatives, executors, successors, administrators, and assigns.

      I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.


_____
(Signature)


_____
(Print name)


_____
(Date)

## APPENDIX H

### ACKNOWLEDGMENT OF RECEIPT OF CONSENT ORDER

I _____, am an employee of _____ and my duties include _____. I have received and read a copy of the Consent Decree, or a summary thereof, in *United States of America v. Related Companies, L.P. et al.*, 14 Civ. 1826 (SAS) (S.D.N.Y.), and have been given instruction on (1) the terms of this Consent Decree, (2) the requirements of the Fair Housing Act, particularly related to the Act's design and construction requirements, and (3) my responsibilities and obligations under the Consent Decree and the Fair Housing Act. I have had all of my questions concerning the Consent Decree answered to my satisfaction.

_____, 20___


_____
Employee Signature

## APPENDIX I

### CERTIFICATION OF FAIR HOUSING TRAINING

On _____, I attended training on the federal Fair Housing Act, including its requirements concerning physical accessibility for persons with disabilities. I was also instructed as to the rental policies and procedures, including the nondiscrimination, complaint, and reasonable accommodation policies of the Fair Housing Act. I have had all of my questions concerning the Fair Housing Act answered to my satisfaction.

_____
Employee Signature

_____
Print Name

_____
Date

**APPENDIX J**

**LIST OF CONDITIONS FOR INSPECTION OF ADDITIONAL PROPERTIES**

1)  Door clear opening widths

2)  Unit entrance door hardware

3)  Unit entrance door maneuvering clearance (exterior side)

4)  Entry thresholds

5)  Kitchen thresholds

6)  Bathroom thresholds

7)  Terrace/balcony thresholds

8)  Accessible route throughout the unit

9)  Range clear floor space

10) Sink clear floor space

11) Refrigerator clear floor space

12) 40″ clearance in galley kitchens/60″ clearance in U-shaped kitchens

13) Kitchen outlets

14) Living room outlets

15) Bathroom clear floor space

16) Toilet distance to side wall

17) Toilet side and rear grab bar reinforcement

18) Bathroom sink clear floor space

19) Bathroom outlets

20) Bathroom toilet clear floor space

21) Bathroom tub/shower clear floor space

22)    Locations of light switches, thermostats, and other environmental controls in units