USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/4/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    Plaintiff,

-against-

RELATED COMPANIES and its subsidiaries and affiliates d/b/a/ RELATED and/or RELATED COMPANIES; TRIBECA GREEN, LLC; BPC GREEN, LLC; ROBERT A.M. STERN ARCHITECTS, LLP, and ISMAEL LEYVA ARCHITECTS, P.C.,

    Defendants.

14 Civ. 1826 (SAS)

**CONSENT DECREE**

## INTRODUCTION

This Consent Decree is entered into between Plaintiff the United States of America (the "United States") and defendants Robert A.M. Stern Architects, LLP, and Ismael Leyva Architects, P.C. (collectively, the "Architect Defendants");

WHEREAS, the United States brought this action (the "Action") to enforce provisions of the Fair Housing Act ("FHA"), codified at 42 U.S.C. §§ 3601–3619. Specifically, the United States' complaint in this Action, filed on March 17, 2014, alleges that the Architect Defendants, together with their co-defendants in this action, have engaged in a pattern or practice of discrimination, and have denied rights to a group of persons in a manner raising an issue of general public importance, by failing to design and/or construct the One Carnegie Hill Apartments ("One Carnegie Hill") and Tribeca Green Apartments ("Tribeca Green"), two residential apartment complexes in Manhattan, with the features of accessible and adaptive design and construction required by the FHA, 42 U.S.C. § 3604(f)(3)(C);

WHEREAS, One Carnegie Hill and Tribeca Green are subject to the accessible design and construction requirements of the FHA, 42 U.S.C. § 3604(f)(3)(c);

A.     **The Architect Defendants**

WHEREAS, Ismael Leyva Architects, P.C. ("Leyva Architects"), a New York professional corporation, prepared certain architectural plans for One Carnegie Hill and, in that capacity, participated in the design and construction of One Carnegie Hill;

WHEREAS, Robert A.M. Stern, LLP ("Stern Architects"), a New York professional corporation, prepared certain conceptual designs for Tribeca Green and, in that capacity, participated in the design and construction of Tribeca Green;

B.     **Relevant Requirements of the Fair Housing Act**

WHEREAS, the FHA provides that residential buildings with four or more dwelling units, and one or more elevators, designed and constructed for first occupancy after March 13, 1991, are Covered Multifamily Dwellings and must include certain basic features of accessible and adaptive design to make such units accessible to or adaptable for use by a person who has or develops a disability, 42 U.S.C. §§ 3604(f)(3)(C) and (f)(7)(A);

WHEREAS, the accessible and adaptive design provisions of the FHA require that for Covered Multifamily Dwellings: (i) the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability; (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by persons with a disability using wheelchairs; (iii) all premises within such dwellings contain the following features of adaptive design: (I) an accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) usable kitchens and bathrooms such that an individual using a wheelchair can maneuver about the space. 42 U.S.C. § 3604(f)(3)(c) (these provisions and features are referred to herein as the "Accessible Design Requirements");

C.      Conditions at One Carnegie Hill and at Tribeca Green

WHEREAS, One Carnegie Hill is a residential apartment building located at 215 East 96th Street in New York, New York. One Carnegie Hill consists of a tower with elevator access and contains 461 dwelling units, as well as public and common use areas, including a leasing office, a laundry valet office, indoor and outdoor recreational areas, two common use terraces, a children's play room, a business center, a fitness center, a residents' club room, and storage areas for residents;

WHEREAS, the United States inspected One Carnegie Hill on February 13-14, 2012, and specifically identified, among other things, the following conditions at One Carnegie Hill that the United States alleges fail to meet the Accessible Design Requirements:

- Reception counter in the main lobby too high to accommodate persons who use wheelchairs;
- Sign for the leasing office lacks raised-letter Braille for persons with visual impairments;
- Excessive force required to operate the entrance door to the leasing office;
- Mailboxes mounted too high for persons who use wheelchairs;
- Excessively high thresholds at entrances to individual units and at entrances to individual unit bathrooms and terraces;
- Insufficient clear opening width of bedroom, bathroom, and closet doors in individual units;
- Kitchens in individual units lack sufficient width to accommodate persons who use wheelchairs;
- Kitchen ranges, refrigerators, and sinks in individual units lack sufficient clearance for persons who use wheelchairs;

- Insufficient clear floor space within bathrooms in individual units for maneuvering by persons who use wheelchairs;
- Inaccessible locations of electrical outlets and radiator controls in individual units for persons who use wheelchairs;
- Lack of clearance at the entrance and excessively high counter at the laundry valet office;
- Excessively high thresholds at entrances to trash rooms;
- Excessively high threshold and lack of raised-letter signage at the children's play room;
- Excessive running slope of ramp leading to the third floor terrace and excessively high threshold at the terrace door;
- Lack of handrails for the ramp leading to the roof terrace and excessively high threshold at the roof terrace door;
- Excessively high thresholds and inaccessible configuration of the shower compartments in the fitness center locker rooms; and
- Steps along the route to the residents' storage area.

WHEREAS, Tribeca Green is a residential apartment building located at 325 North End Avenue in New York, New York. Tribeca Green consists of a tower with elevator access and contains 274 dwelling units, as well as public and common use areas, including a leasing office, laundry facilities, a fitness center, a business center, and a children's play room;

WHEREAS, the United States inspected Tribeca Green on February 1-2, 2012, and specifically identified, among other things, the following conditions at Tribeca Green that the United States alleges fail to meet the Accessible Design Requirements:

- Counter at main lobby desk too high to accommodate persons who use wheelchairs;

- Sink in the lobby unisex bathroom too close to sidewall and paper towel dispenser and soap dispenser in that bathroom too high to accommodate persons who use wheelchairs;
- Mailboxes mounted too high to accommodate persons who use wheelchairs;
- Excessively high thresholds at entrances to individual units and at bathroom, kitchen, and terrace entrances within individual units;
- Insufficient clear opening width of bedroom, bathroom, terrace, and closet doors in individual units;
- Kitchens in individual units lack sufficient width to accommodate persons who use wheelchairs;
- Kitchen sinks and refrigerators in individual units lack sufficient clearance for persons who use wheelchairs;
- Insufficient clear floor space within bathrooms in individual units for maneuvering by persons who use wheelchairs;
- Rear grab bar location behind toilets in individual unit bathrooms obstructed by countertops;
- Light switches, thermostats, and kitchen electrical outlets in individual units inaccessible to persons who use wheelchairs;
- Trash rooms lack sufficient clearance and appropriate hardware to accommodate persons who use wheelchairs;
- Washing machines in the laundry rooms mounted on curbs that interfere with access by individuals who use wheelchairs;
- Sinks in laundry rooms lack sufficient knee clearance for persons who use wheelchairs;

- Sink in the children's play room lack sufficient knee clearance for persons who use wheelchairs;
- Entrance doors to the fitness center and the entertainment lounge lack sufficient clearance for persons who use wheelchairs;
- Room identification signs for common areas lack raised-letter or Braille; and
- Common area doors require excessive force for persons with certain disabilities.

### D. Consent of the Parties to Entry of this Decree

WHEREAS, the parties agree that this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a), and further agree that this controversy should be resolved without further proceedings and without an evidentiary hearing or a trial;

WHEREAS, the parties' entry into this Consent Decree is not intended to and does not limit the Architect Defendants, individually or collectively, from instituting a separate action seeking contribution, or damages in the nature of indemnification or breach of contract or for any related reason from any individual or entity involved in the design and construction of the property that is the subject of this Consent Decree;

WHEREAS, the Architect Defendants assert that they did not breach any of their contractual obligations or deviate from prevailing industry standards of care in New York City at the time they rendered services for One Carnegie Hill and Tribeca Green.

WHEREAS, the parties agree to the entry of this Consent Decree.

**It is hereby ORDERED, ADJUDGED, and DECREED:**

### I. GENERAL INJUNCTION

1. The Architect Defendants and each of their officers, employees, agents, successors, and assigns, and all other persons in active concert or participation with them, are

6

enjoined from discriminating on the basis of disability as prohibited by the FHA, 42 U.S.C. § 3604.

## II. ACKNOWLEDGEMENTS

2. With regard to its design of One Carnegie Hill, the Levya Architects:

   a. Admit and acknowledge that the Levya Architects provided certain design services to Upper East Lease Associates, LLC for One Carnegie Hill. Specifically included as part of said services, Levya Architects prepared certain architectural drawings for the dwelling units and supplied certain specifications for the dwelling units that were used by the construction contractors to construct One Carnegie Hill.

   b. Do not dispute that, as built and constructed, certain features of One Carnegie Hill did not satisfy the accessibility standards established under the Fair Housing Act Guidelines promulgated by the U.S. Department of Housing and Urban Development.

3. With regard to its design of Tribeca Green, the Stern Architects:

   a. Admit and acknowledge that the Stern Architects provided certain design services to BPC Green, LLC of Tribeca Green. Specifically included as part of said services, Stern Architects prepared certain conceptual drawings for the dwelling units that were used to prepare the architectural drawings that were used by the construction contractors to construct Tribeca Green.

   b. Do not dispute that, as built and constructed, certain features of Tribeca Green did not satisfy the accessibility standards established under the Fair Housing Act Guidelines promulgated by the U.S. Department of Housing and Urban Development.

### III. NON-DISCRIMINATION IN OTHER DESIGN AND CONSTRUCTION

4. For the duration of this Consent Decree, if the Architect Defendants prepare any architectural or site plans, drawing, or blueprints for covered multi-family housing, as defined in the FHA, and said plans, drawing or blueprints are intended to be issued to a contractor for construction purposes, the Architect Defendants shall include on such plans, drawings, or blueprints a statement attesting to compliance with the FHA and one of the following standards (each a "Standard"), where such a single Standard has been used in its entirety (*i.e.*, where every design feature within the Additional Property in question complies with all of the provisions in the particular selected Standard that addresses the FHA requirements): (i) the Guidelines; (ii) a standard designated as an FHA safe harbor by the Department of Housing and Urban Development; or (iii) a recognized, comparable, objective standard of accessibility that has been found by this district court or the Second Circuit to incorporate the requirements of the Fair Housing Act; and the Architect Defendants shall maintain and provide such plans, drawing, or blueprints to the United States upon request.

5. During the term of this Consent Decree, the Architect Defendants shall maintain, and provide to the United States upon request, the following information and statements regarding any Covered Multifamily Dwellings intended to be designed, in whole or in part, by them or by any entities in which they have a position of control as an officer, director, member, or manager, or have a ten-percent (10%) or larger ownership share:

   a. the name and address of the project;

   b. a description of the project and the individual units;

   c. the name, address and telephone number of the individual architect(s) who will be signing and sealing the drawings on behalf of the Architect Defendants ("Responsible Architect");

8

    d. a statement from each Responsible Architect acknowledging and describing his/her knowledge of and training in the requirements of the Fair Housing Act and the Guidelines, and in the field of accessible site design, and certifying that he/she has reviewed the architectural plans for the project and that the design specifications therein fully comply with the requirements of the Fair Housing Act and a Standard.

6. If the architectural plans referred to in Paragraph 5 above are revised, and the revisions could have any impact on whether the dwellings or complex comply with the Fair Housing Act and/or a Standard, the Architect Defendants shall obtain, maintain, and provide to the United States upon request, a statement from the Responsible Architect that all specifications in the revised architectural plans, as pertinent, comply with the requirements of the Fair Housing Act and a Standard.

7. The Architect Defendants will make their designs for all new construction of Covered Multifamily Dwellings fully compliant with the Accessible Design Requirements, the Americans with Disabilities Act, and the Americans with Disabilities Act Accessibility Standards to the extent applicable to Covered Multifamily Dwellings. Moreover, with respect to all new construction of Covered Multifamily Dwellings, the Architect Defendants shall make their design(s) for all such construction fully compliant with a Standard where every design feature of the project in question complies with all of the provisions in the particular selected Standard that address FHA requirements.

### IV. PAYMENTS TO AGGRIEVED PERSONS

8. Within 30 days of entry of this Consent Decree, the Architect Defendants shall deposit in an interest-bearing account the total sum of THIRTY-TWO THOUSAND DOLLARS ($32,000) for the purpose of compensating any aggrieved persons who may have suffered as a

result of the Architect Defendants allegedly discriminatory housing practices regarding One Carnegie Hill and Tribeca Green. This money shall be referred to as the "Architect Settlement Fund."

9. The United States shall investigate the claims of allegedly aggrieved persons and shall determine which persons are aggrieved and an appropriate amount of damages that should be paid to each such person. The United States will inform the Architect Defendants in writing of each of its determinations, together with a copy of a sworn statement or declaration from each aggrieved person setting forth the factual basis of his or her claim.

10. If the Architect Defendants dispute the amount of a payment to an aggrieved person, the Architect Defendants shall, within fourteen (14) days of receiving notice of a determination (a "Determination") from the United States, provide a written objection to the United States, along with any information or documents that they believe may refute the aggrieved person's claim. The United States shall give due consideration to any objections it receives from the Architect Defendants and shall submit, following any objection, its reconsidered determination (a "Reconsidered Determination") to the Architect Defendants, in writing, setting forth the aggrieved person and the amount that the aggrieved person shall be paid. If the Architect Defendants dispute the Reconsidered Determination, the Architect Defendants shall file an objection with the Court, which may sustain or overrule the objection. The Architect Defendants shall, no later than twenty (20) days after receiving a Determination to which no objection has been made, ten (10) days after receiving a Reconsidered Determination to which no objection has been filed with the Court, or ten (10) days after any decision by the Court overruling a filed objection, whichever is earliest, deliver to the United States checks payable to aggrieved persons in the amounts identified by the United States. In no event shall the aggregate of all such checks exceed the amount of the Architect Settlement Fund, including

accrued interest. No aggrieved person shall be paid until he/she has executed and delivered to the United States the release at Appendix A.

11. In the event that less than the total amount in the Architect Settlement Fund including accrued interest is distributed to aggrieved persons, and after the United States determines that no further aggrieved persons will be identified, the remainder of the funds in the Architect Settlement Fund shall be distributed to a qualified organization(s) mutually agreed upon by the United States and the Architect Defendants, subject to the approval of the Court, for the purpose of conducting fair housing enforcement-related activities in New York City. Before selecting the qualified organization(s), the Architect Defendants will obtain a proposal from the organization(s) on how the funds will be used consistent with the above-stated purpose, submit such proposal to the United States, and consult with and obtain the non-objection of the United States. The United States and the Architect Defendants may request modification of the proposal before approving the organization(s). The parties shall thereafter seek approval from the Court to distribute the remaining funds to the qualified organization(s). The Architect Defendants shall distribute the funds in a manner directed by the Court after the United States informs the Court that no further aggrieved persons will be identified.

## V. CIVIL PENALTY

12. Without admitting liability, within 30 days of the date of the entry of this Consent Decree, the Architect Defendants shall pay a civil penalty of THIRTY-TWO THOUSAND DOLLARS ($32,000) pursuant to 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest. The Architect Defendants shall pay said sum by submitting a check made payable to the "United States of America" to counsel for the United States.

## VI. EDUCATIONAL PROGRAM

13. Within thirty (30) days of the entry of this Consent Decree, the Architect Defendants shall provide a copy of this Consent Decree to all their current employees who have responsibilities involving building design ("Architectural Employees"), as well as to any other individuals or entities (*e.g.*, firms) that are involved in the design of any Covered Multifamily Dwellings as the Architect Defendants' agent ("Agent")[1], and secure the signed statement from each Architectural Employee and Agent acknowledging that he, she, or it has received and read the Consent Decree, and has had an opportunity to have questions about the Consent Decree answered. This statement shall be substantially similar to the form of Appendix B.

14. During the term of this Consent Decree, any new Architectural Employee of the Architect Defendants who will be involved in the design of Covered Multifamily Dwellings, as well as any Agent that will be involved in the design of Covered Multifamily Dwellings, shall, within 30 days after the date he or she commences an agency or employment relationship with the Architect Defendants, be given a copy of this Consent Decree by the Architect Defendants, and the Architect Defendants shall require each such new employee or Agent to sign a statement, acknowledging that he, she, or it has received and read the Consent Decree, and has had an opportunity to have questions about the Consent Decree answered. This statement shall be substantially similar to the form of Appendix B.

15. In lieu of providing Architectural Employees or Agents listed in Paragraphs 13 and 14 above with copies of the Consent Decree as required therein, the Architect Defendants may provide their Architectural Employees or Agents with a summary of the Consent Decree, designed to provide personnel with information relevant to their positions. The Architect

---

[1] It is understood and agreed that consultants retained by the Architect Defendants to render engineering or other design services shall not be considered an agent unless said consultant has the authority to act on the Architect Defendants' behalf.

12

Defendants may only provide such summaries in lieu of copies of the Consent Decree with the United States' advance written approval of the form and content of any proposed summary.

16. The Architect Defendants shall also ensure that they and their architect employees as well as any Agents who are involved in the design of any Covered Multifamily Dwellings have a copy of, are familiar with, and personally have reviewed, the Fair Housing Accessibility Guidelines, 56 Fed. Reg. 9472 (1991), and the United States Department of Housing and Urban Development, Fair Housing Act Design Manual, A Manual to Assist Builders in Meeting the Accessibility Requirements of the Fair Housing Act (August 1996, Rev. April 1998).

17. Within 180 days of the date of entry of this Consent Decree, the Architect Defendants and all of their architect employees whose duties, in whole or in part, involve or will involve supervision over the design of Covered Multifamily Dwellings, as well as any entities (e.g., firms) acting as the Architect Defendants' agent that will be involved in the design of Covered Multifamily Dwellings, shall undergo training on the design and construction requirements of the Fair Housing Act. The training shall be conducted by a qualified individual approved by the Department of Justice, which approval shall not be unreasonably withheld or delayed (the "Trainer"); and any expenses associated with this training shall be borne by the Architect Defendants. The Architect Defendants shall provide to the United States, 30 days before the training, the name(s), address(es) and telephone number(s) of the trainer(s); and copies of the training outlines and any materials to be distributed by the trainers. The Architect Defendants shall provide to the United States, 30 days after the training, certifications executed by all covered employees and entities confirming their attendance, in a form substantially equivalent to Appendix C.

## VII. NOTIFICATION AND DOCUMENT RETENTION REQUIREMENTS

18. Within 180 days after the date of entry of this Consent Decree, the Architect Defendants shall submit to the United States the executed certifications and statements required by Paragraphs 13, 14, and 17 of this Consent Decree.

19. Thereafter, during the term of this Consent Decree, the Architect Defendants shall, on the anniversary of the entry of this Consent Decree, submit to the United States any additional signed statements required by Paragraph 17 of this Consent Decree.

20. For the duration of this Consent Decree, the Architect Defendants shall advise the United States in writing within 15 days of receipt of any written administrative or legal fair housing complaint regarding any property designed by them, or against any employees of the Architect Defendants working at or for any such property, alleging discrimination on the basis of disability in housing under federal law. Upon reasonable notice, the Architect Defendants shall also provide the United States all information in their possession that the United States may reasonably request concerning any such complaint. The Architect Defendants shall also advise counsel for the United States, in writing, within 15 days of the resolution of any complaint.

21. For the term of this Consent Decree, the Architect Defendants are required to preserve all records in their possession related to this Consent Decree, for One Carnegie Hill and/or Tribeca Green, and any other Covered Multifamily Dwellings designed by them during the duration of this Consent Decree. Upon reasonable notice to the Architect Defendants, representatives of the United States shall be permitted to inspect and copy any records of the Architect Defendants bearing on compliance with this Consent Decree at any and all reasonable times, provided, however, that the United States shall endeavor to minimize any inconvenience to the Architect Defendants from such inspections.

## VIII. DURATION OF CONSENT DECREE AND TERMINATION OF LEGAL ACTION

22. This Consent Decree shall remain in effect for three (3) years following entry of this Consent Decree by the Court. By consenting to entry of this Consent Decree, the parties agree that in the event that either Architect Defendant engages in any future conduct occurring after entry of this Consent Decree that leads to a determination of a violation of the FHA, such conduct shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

23. The Complaint in this action is hereby dismissed as to the Architect Defendants without prejudice to reinstatement in accordance with the next paragraph.

24. The Complaint in this action shall be reinstated as to an Architect Defendant at any time during the term of this Consent Decree if the Court determines that such Defendant has failed to perform, in a timely manner, any act required by this Consent Decree or has otherwise failed to act in conformity with any provision of this Consent Decree.

25. The Court shall retain jurisdiction for the duration of this Consent Decree to enforce the terms of the Consent Decree. The United States may move the Court to extend the duration of the Consent Decree or in the interests of justice. The duration of the Consent Decree also may be extended by the mutual written agreement of the United States and the Architect Defendants.

26. The United States and the Architect Defendants shall endeavor, in good faith, to resolve informally any differences regarding interpretation of and compliance with this Consent Decree prior to bringing such matters to the Court for resolution. However, in the event of a failure by the Architect Defendants to perform, in a timely manner, any act required by this Consent Decree or otherwise for their failure to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to

have been performed, and an award of any damages, costs, and reasonable attorney's fees which may have been occasioned by the violation or failure to perform.

27. Upon termination of this Consent Decree, the United States releases the Architect Defendants, and each of their employees, agents, successors, and assigns and all other persons acting in concert or participation with them, from claims by the United States regarding alleged failures, as of the date of entry of this Consent Decree, to design One Carnegie Hill and/or Tribeca Green in accordance with to the FHA, including all of the claims alleged in the Action, except for matters referred by the Department of Housing and Urban Development pursuant to 42 U.S.C. § 3612(o). Provided, however, that the Architect Defendants are not released from any claims by the United States concerning any Covered Multifamily Dwellings other than One Carnegie Hill and Tribeca Green, including any claims regarding previously designed dwellings and any claims regarding current or future designed dwellings. Nor are the Architect Defendants released from claims, if any, regarding FHA violations at One Carnegie Hill and/or Tribeca Green other than failures to design those properties as of the Effective Date of this Consent Decree as required by the FHA.

28. Upon the expiration of the Consent Decree and all obligations thereunder, the United States shall seek an order dismissing the claims in the Complaint against the Architect Defendants with prejudice.

### IX. TIME FOR PERFORMANCE

29. Any time limits for performance imposed by this Consent Decree may be extended by the mutual written agreement of the United States and the relevant Architect Defendant.

## X. MISCELLANEOUS

30. The United States and each Architect Defendant will bear its own costs and attorney's fees associated with this litigation.

31. The United States and the Architect Defendants understand and agree that this Consent Decree and the appendices thereto contain the entire agreement between them, and that any statements, representations, promises, agreements, or negotiation, oral or otherwise, between the parties or their counsel that are not included herein shall be of no force or effect.

The undersigned apply for and consent to the entry of this Consent Decree:

*For the United States*:

PREET BHARARA
United States Attorney

By: _____
LI YU
CARINA H. SCHOENBERGER
EMILY E. DAUGHTRY
JESSICA JEAN HU
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel. Nos. (212) 637-2734/2822/2777/2726
Fax. Nos. (212) 637-2686/2702
Li.Yu@usdoj.gov
Carina.Schoenberger@usdoj.gov
Emily.Daughtry@usdoj.gov
Jessica.Hu@usdoj.gov

*For the Architect Defendants*:

GOGICK, BYRNE & O'NEILL, LLP

By: _____
STEPHEN P. SCHRECKINGER
11 Broadway
New York, New York 10004
Tel. Nos. (212) 422-9424
Fax. Nos. (212) 422-9429
sps@gogick.com

SO ORDERED: _____

HON. SHIRA A. SCHEINDLIN
UNITED STATES DISTRICT JUDGE

3/4/15

17

## APPENDIX A

### RELEASE FORM

      In consideration of the payment of the sum of _____ dollars ($_____), pursuant to the Consent Decree entered in *United States of America v. The Related Companies et al.*, 14 Civ. 1826 (SAS) (S.D.N.Y.), I hereby release _____ from any and all liability for any claims, legal or equitable, I may have against them arising out of the issues alleged in the above-styled action.

      I fully acknowledge and agree that this release of the above-named parties shall be binding on my heirs, representatives, executors, successors, administrators, and assigns.

      I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

_____
(Signature)


_____
(Print name)


_____
(Date)

## APPENDIX B

### ACKNOWLEDGMENT OF RECEIPT OF CONSENT DECREE

I _____, am an employee of _____ and my duties include _____. I have received and read a copy of the Consent Decree, or a summary thereof, in *United States of America v. The Related Companies et al.*, 14 Civ. 1826 (SAS) (S.D.N.Y.), and have been given instruction on (1) the terms of this Consent Decree, (2) the requirements of the Fair Housing Act, particularly related to the Act's design and construction requirements, and (3) my responsibilities and obligations under the Consent Decree and the Fair Housing Act. I have had all of my questions concerning the Consent Decree answered to my satisfaction.

_____, 20\_\_\_\_

_____
Employee Signature

## APPENDIX C

## CERTIFICATION OF FAIR HOUSING TRAINING

On _____, I attended training on the federal Fair Housing Act, including its requirements concerning physical accessibility for persons with disabilities. I was also instructed as to the rental policies and procedures, including the nondiscrimination, complaint, and reasonable accommodation policies of the Fair Housing Act. I have had all of my questions concerning the Fair Housing Act answered to my satisfaction.

_____
Employee Signature


_____
Print Name


_____
Date